# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-51087

United States Court of Appeals
Fifth Circuit

**FILED**

December 22, 2014

Lyle W. Cayce
Clerk

EASTMAN CHEMICAL COMPANY,

Plaintiff – Appellee,

v.

PLASTIPURE, INCORPORATED; CERTICHEM, INCORPORATED,

Defendants – Appellants.

Appeal from the United States District Court
for the Western District of Texas

Before REAVLEY, ELROD, and SOUTHWICK, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

After a jury found that PlastiPure, Inc. and CertiChem, Inc. violated the Lanham Act by making false statements of fact about their competitor's product, the district court entered an injunction against both companies. On appeal, PlastiPure and CertiChem challenge the jury verdict and the injunction on various grounds, including that their statements constituted non-actionable scientific opinions rather than actionable statements of fact. Because the Lanham Act prohibits false commercial speech even when that speech makes scientific claims, and because Appellants' other contentions lack merit, we AFFIRM.

No. 13-51087

## I.

Eastman Chemical Company (Eastman) manufactures a plastic resin called Tritan and sells it to manufacturers of water bottles, baby bottles, food containers, and other consumer products. Eastman launched Tritan commercially in 2007 as an alternative to polycarbonate, which at that point was the primary plastic used in food contact applications. Shortly after Tritan's launch, consumers became concerned that an ingredient in polycarbonate, bisphenol A (BPA), could be harmful to humans. The concerns about BPA were premised on scientific studies purporting to show that BPA could activate estrogen receptors in the human body. Chemicals that mimic estrogen are said to possess estrogenic activity (EA), and they can trigger hormone-dependent cancers, reproductive abnormalities, and other negative health conditions. Eastman recognized that consumer fears about polycarbonate could be a boon to its sales of Tritan, provided that it could assure potential clients that Tritan does not exhibit EA. To that end, Eastman conducted a battery of tests on Tritan which, according to Eastman, showed that Tritan does not exhibit EA.

PlastiPure and CertiChem also hoped to seize on the opportunity created by the public's desire for BPA-free plastics. PlastiPure and CertiChem are companies founded by Dr. George Bittner, a professor of neurobiology at the University of Texas at Austin. PlastiPure developed a plastic resin that it claims does not exhibit EA and, like Eastman, PlastiPure sells its plastic resin to product manufacturers. CertiChem's primary focus is on testing materials for various sorts of hormonal activity.

In 2011, CertiChem published an article summarizing the results of its testing of more than 500 commercially available plastic products. The article was published in *Environmental Health Perspectives*, a peer-reviewed journal published by the National Institutes of Health. Although products made with

No. 13-51087

Tritan were among the products tested, Tritan was not mentioned by name in the article.

After research on the article was completed, but prior to the article's publication, PlastiPure published a three-page sales brochure entitled "EA-Free Plastic Products: Beyond BPA-Free" and distributed the brochure at trade shows and directly to potential customers. The brochure contains a chart that depicts products containing "Eastman's Tritan" as having significant levels of EA. The caption to the chart states: "Examples of test results of products claiming to be EA-free or made from materials claiming to be EA-free are given in the figure to the right. Most examples are made from Eastman's Tritan™ resin."

Based on the sales brochure and other marketing materials, Eastman filed suit against PlastiPure and CertiChem, alleging false advertising under the Lanham Act, business disparagement, tortious interference, unfair competition, and conspiracy. At trial, both sides offered expert testimony about the proper definition of EA, the proper way to test for EA, and whether Tritan exhibits EA. After a jury verdict in favor of Eastman, the district court entered judgment against PlastiPure and CertiChem, ruling that both companies willfully violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), engaged in unfair competition under Texas common law, and conspired with one another in connection with these violations. The district court, after denying their motion for judgment as a matter of law, enjoined PlastiPure and CertiChem from distributing the above-referenced sales brochure and from:

> making any verbal or written statement, expressly or by implication, to any third party in connection with any advertising, promotion, offering for sale, or sale of goods or services or in any other commercial manner that:

3

No. 13-51087

(1) Tritan resins and products leach chemicals having significant estrogenic activity; (2) Tritan, or products made with Tritan, are dangerous to human health because they exhibit estrogenic activity; or (3) Tritan resins and products leach chemicals having significant estrogenic activity after common-use stresses.

PlastiPure and CertiChem make three arguments on appeal. First, they argue that the district court's injunction is improper because their statements were scientific opinions rather than actionable facts. Second, they argue that the jury verdict is based on legally insufficient evidence. Third, they argue that the district court's jury instructions and verdict form contain errors warranting reversal.

## II.

Appellants contend that the district court should not have entered its injunction because Appellants' statements about Tritan are not actionable statements of fact under the Lanham Act. We review the grant of a permanent injunction for abuse of discretion. *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013). An abuse of discretion may be found where the trial court "(1) relies on clearly erroneous factual findings when deciding to grant or deny the permanent injunction, (2) relies on erroneous conclusions of law when deciding to grant or deny the permanent injunction, or (3) misapplies the factual or legal conclusions when fashioning its injunctive relief." *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distribution Co.*, 520 F.3d 393, 402 (5th Cir. 2008) (internal quotation marks omitted).

Section 43(a) of the Lanham Act prohibits false advertising. 15 U.S.C. § 1125(a). It provides a civil cause of action against any person who, in connection with goods or services, uses any "false or misleading description of fact, or false or misleading representation of fact . . . ." *Id.* § 1125(a)(1). "Essential to any claim under section 43(a) of the Lanham Act is a

4

determination of whether the challenged statement is one of fact—actionable under section 43(a)—or one of general opinion—not actionable under section 43(a)." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495–96 (5th Cir. 2000).

We have held that "[a] statement of fact is one that (1) admits of being adjudged true or false in a way that (2) admits of empirical verification." *Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 679 (5th Cir. 1986). Similarly, we have said that the challenged statement must make a "'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" *Pizza Hut*, 227 F.3d at 496 (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999)); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (stating that a statement of fact is one that makes "a specific and measurable advertisement claim of product superiority"). In contrast, "[b]ald assertions of superiority" and "exaggerated, blustering, and boasting statement[s]" are non-actionable opinions. *Pizza Hut*, 227 F.3d at 496–97. Predictions of future events are also non-actionable expressions of opinion. *Presidio Enters.*, 784 F.2d at 680.

Appellants argue that commercial statements relating to live scientific controversies should be treated as opinions for Lanham Act purposes. According to Appellants, enjoining statements that embrace one side of an open scientific debate would stifle academic freedom and inhibit the free flow of scientific ideas, contrary to the principles undergirding the First Amendment. Accordingly, they urge us to classify their statements about Tritan's EA content as opinions rather than actionable facts.

As primary support for their argument, Appellants offer the Second Circuit's opinion in *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490 (2d Cir. 2013). In *ONY*, the parties were rival producers of non-human

surfactants, which are biological substances used to treat respiratory conditions in infants. The defendants conducted a study of the relative efficacy of different surfactants, concluding that their own surfactant was associated with a lower mortality rate and a shorter length of hospital stay than the plaintiff's surfactant. The defendants hired several physicians to present the study's findings at pediatric society meetings, and those physicians published the study's findings in an article in a peer-reviewed journal. After the article's publication, the defendants "issued a press release touting its conclusions and distributed promotional materials that cited the article's findings." *Id.* at 495.

The plaintiff in *ONY* filed a complaint alleging, *inter alia*, tortious interference and violations of the Lanham Act. According to the *ONY* plaintiff, the published article contained "five distinct incorrect statements of fact about the relative effectiveness" of the companies' surfactants. *Id.* at 494. The district court dismissed the complaint and the Second Circuit affirmed. The Second Circuit began its analysis by noting that "[s]cientific academic discourse poses several problems for the fact-opinion paradigm of First Amendment jurisprudence." *Id.* at 496. Although scientific articles typically make specific and measurable claims that can be reasonably interpreted as statements of objective fact, "it is the essence of the scientific method that the conclusions of empirical research are tentative and subject to revision, because they represent inferences about the nature of reality based on the results of experimentation and observation." *Id.* After a thorough analysis, the Second Circuit concluded that the First Amendment places scientific debates unfolding within the scientific community beyond the reach of the Lanham Act. According to the Second Circuit, statements in scientific literature "are more closely akin to matters of opinion, and are so understood by the relevant scientific communities." *Id.* at 497.

No. 13-51087

Appellants insist that the present case is on "all fours" with *ONY*. We disagree. The plaintiff in *ONY* sought to enjoin statements made within the academic literature and directed at the scientific community. In that context, the Second Circuit concluded that the defendants' statements should be treated as opinions, else the prospect of defamation liability would stifle academic debate and trench upon First Amendment values. *See id.* at 497 ("[T]he trial of ideas plays out in the pages of peer-reviewed journals, and the scientific public sits as the jury."). Here, in contrast, Eastman did not sue Appellants for publishing an article in a scientific journal. Rather, Eastman sought to enjoin statements made in commercial advertisements and directed at customers. As the district court aptly summarized:

> This lawsuit is not about Dr. Bittner's scientific paper. It is about statements made in commercial advertisements or promotions, not statements made in a peer-reviewed journal. It is about statements made to consumers, not scientists. It is about statements made without the necessary context presented by a full scientific study, such as a description of the data, the experimental methodology, the potential conflicts of interest, and the differences between raw data and the conclusions drawn by the researcher.

*Eastman Chem. Co. v. PlastiPure, Inc.*, 969 F. Supp. 2d 756, 764 (W.D. Tex. 2013). In this commercial context, the First Amendment is no obstacle to enforcement of the Lanham Act. *See Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 638 (1985) ("The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading . . . ."); *see also Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 562–63 (1980)

No. 13-51087

("The Constitution therefore accords a lesser protection to commercial speech than to other constitutionally guaranteed expression.").[1]

Given the applicable binding precedent, it is of no moment that the commercial speech in this case concerned a topic of scientific debate. Advertisements do not become immune from Lanham Act scrutiny simply because their claims are open to scientific or public debate. Otherwise, the Lanham Act would hardly ever be enforceable—"many, if not most, products may be tied to public concerns with the environment, energy, economic policy, or individual health and safety." *Cent. Hudson*, 447 U.S. at 563 n.5. The Supreme Court has "made clear that advertising which links a product to a current public debate is not thereby entitled to the constitutional protection afforded noncommercial speech." *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 68 (1983) (internal quotation marks omitted); *see also* Recent Case, 127 Harv. L. Rev. 1815, 1819 (2014) ("Dissemination of a scientific article as part of a company's marketing campaign is for promotional purposes and therefore qualifies as commercial speech."). The First Amendment ensures a robust discourse in the pages of academic journals, but it does not immunize false or misleading commercial claims. *See, e.g.*, *Church & Dwight Co. v. Clorox Co.*, 840 F. Supp. 2d 717, 722–23 (S.D.N.Y. 2012) (enjoining commercial

---

[1] Jurists and commentators have urged the Supreme Court to abandon the distinction between commercial and non-commercial speech. *See, e.g.*, *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 518–28 (1996) (Thomas, J., concurring in part and concurring in judgment); Alex Kozinski & Stuart Banner, *Who's Afraid of Commercial Speech?*, 76 Va. L. Rev. 627 (1990); *see also* Martin H. Redish, *Product Health Claims and the First Amendment: Scientific Expression and the Twilight Zone of Commercial Speech*, 43 Vand. L. Rev. 1433 (1990) (acknowledging that "the Court has allowed certain forms of regulation for commercial speech that clearly would be impermissible for more traditional subjects of expression," but arguing that commercial-scientific speech should be "viewed not as commercial, but rather as fully protected scientific expression. To hold otherwise would be to penalize traditionally protected expression for no reason other than the communicator's personal motivation for making that expression. Motivation never has influenced the level of protection given to speech in other contexts and its use cannot be rationalized under first amendment theory.").

claims as literally false because tests supporting those claims were unreliable); *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 944 (3d Cir. 1993) (enjoining claims that Pennzoil motor oil outperformed Castrol motor oil with respect to viscosity breakdown); *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir. 1991) (enjoining claims that Excedrin was scientifically superior to Tylenol at relieving pain).

Appellants make much of the fact that the Second Circuit in *ONY* also dismissed a tortious interference claim regarding the defendants' "touting and distributing the article's findings for promotional purposes." *Id.* at 498–99. Even if it were binding on us, that portion of the Second Circuit's holding would not affect the analysis here, for two reasons. First, the Second Circuit addressed secondary distribution of the article in the context of a state law tortious interference claim—not in the context of the Lanham Act. The Second Circuit did not hold that promotional materials embracing one side of a scientific debate are opinions under the Lanham Act; rather, it held that the act of distributing those statements did not give rise to liability for tortious interference. Second, the nature of the secondary distribution in *ONY* is dissimilar to that which occurred in this case. In *ONY*, the secondary distribution was limited to the issuance of a press release summarizing the article's findings and dissemination of the article itself. Here, the secondary distribution did not include any dissemination of the article; in fact, the sales brochure was distributed prior to the article's publication. Nor did the sales brochure simply tout the article's findings—the sales brochure specifically highlights the alleged EA content of Tritan, but the article never even mentions Tritan by name. As the district court recognized, the different results in *ONY* and in this case reflect the difference between presenting an article's conclusions and "transform[ing] snippets of . . . a paper which never mentions

No. 13-51087

Tritan or Eastman by name . . . into commercial advertisements claiming Tritan is harmful." *Eastman Chem. Co.*, 969 F. Supp. 2d at 764.

Application of the Lanham Act to Appellants' promotional statements will not stifle academic freedom or intrude on First Amendment values. By its terms, the injunction only applies to statements made "in connection with any advertising, promotion, offering for sale, or sale of goods or services." Appellants may continue to pursue their research and publish their results; they simply may not push their product by making the claims the jury found to be false and misleading.[2]

## III.

Appellants argue that the jury's verdict must be reversed because "there is no legally sufficient evidence demonstrating that Tritan does not have EA." According to Appellants, the jury had no basis on which to conclude that Appellants' statements about Tritan's EA were false. In response, Eastman contends that "substantial trial evidence" showed that Tritan is free of EA, and that "the jury reasonably concluded that Defendants' statements to the contrary were affirmatively false." Eastman also points out that Appellants

---

[2] The district court's injunction permits Appellants to "seek relief from the injunction" if new research proves "the statements the jury found to be false and misleading are no longer false and misleading . . . ." According to Appellants, the nature of the district court's injunction reveals that Appellants' statements are not statements of objective fact: "a statement of historical fact (*e.g.*, 'Tritan has EA') cannot be false on one day, and true on the next." The fact that Appellants might be able someday to prove that their statements are true does not make the injunction improper. If it did, companies could make all sorts of unsupported claims and then avoid liability by arguing that they might be able to prove the truth of the claims at some point in the future. Instead, when a jury finds statements to be false, an injunction properly issues and then can be modified or dissolved if factual circumstances change. *See ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 445 F.3d 841, 850 (5th Cir. 2006) ("Modification of an injunction is appropriate when the legal or factual circumstances justifying the injunction have changed."); *see also Basic Research, L.L.C. v. Cytodyne Technologies, Inc.*, No. 2:99-CV-343K, 2000 WL 33363261, at *11 (D. Utah Dec. 20, 2000) (vacating injunction in Lanham Act case after defendants conducted additional tests that supported defendants' scientific claims).

fail to challenge the jury's finding that the statements were misleading, which serves as an independent basis of liability under the Lanham Act.

"[O]ur standard of review with respect to a jury verdict is especially deferential." *SMI Owen Steel Co., Inc. v. Marsh U.S.A., Inc.*, 520 F.3d 432, 437 (5th Cir. 2008) (internal quotation marks omitted). "Although we review the denial of a motion for judgment as a matter of law *de novo*, we apply the same legal standard as the district court." *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 451 (5th Cir. 2013) (en banc). "Under that standard, a litigant cannot obtain judgment as a matter of law 'unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'" *Id.* (quoting *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 498 (5th Cir. 2012), *cert. denied*, —— U.S. ——, 133 S. Ct. 1585 (2013)). In conducting our review, we must draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that we might regard as more reasonable. *Westlake Petrochems., L.L.C. v. United Polychem, Inc.*, 688 F.3d 232, 239 (5th Cir. 2012). For "'it is the function of the jury as the traditional finder of the facts, and not for the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.'" *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012) (quoting *Mosley v. Excel Corp.*, 109 F.3d 1006, 1009 (5th Cir. 1997)).

A reasonable jury could have concluded that Appellants' statements were false. Eastman introduced evidence of tests conducted by four separate laboratories that found no evidence of estrogenic activity in Tritan. Eastman's expert witnesses testified that Tritan was non-harmful and was EA-free. Eastman's experts also testified that most of Appellants' tests were not scientifically reliable, and that the few reliable tests actually showed no evidence of EA. No expert on either side ever testified that Tritan is harmful to humans. Of course, Appellants offered their own evidence. Dr. Bittner

testified extensively about his expertise and about the reliability of Appellants' testing methods. Multiple expert witnesses testified that Appellants' tests were scientifically reliable and could accurately detect the presence of EA. After hearing this evidence, the jury was free to, and apparently did, credit Eastman's evidence that Tritan was EA-free over the contrary evidence presented by Appellants.[3] *See Boh Bros. Constr. Co.,* 731 F.3d at 452 ("'We are not to tamper lightly with the considered judgment of those drawn together at one point in time to render a judgment that is representative of the good common sense of the American people.'" (quoting *Stacey v. Allied Stores Corp.,* 768 F.2d 402, 406 (D.C. Cir. 1985)); *see also Eastman Chem. Co.,* 969 F. Supp. 2d at 761 (noting "the capability of juries to understand scientific evidence and weigh the credibility of the competing experts, notwithstanding their contradictory conclusions and dogmatic assertions" (internal quotation marks omitted)).

In any event, the jury also found that Appellants' statements were misleading, and Appellants do not challenge the sufficiency of the evidence on that point. The jury's finding that the statements were misleading serves as an independent basis for the district court's injunction. *See* 15 U.S.C. § 1125(a)(1) (imposing liability for any "false *or misleading* description of fact, or false *or misleading* representation of fact" (emphases added)). The district court properly instructed the jury that it could find the challenged statements "misleading" even if they were not literally false, and that liability for misleading statements would only attach with additional findings of "deception" and "materiality." Sure enough, the jury found that the statements

---

[3] The parties debate whether our circuit should adopt the "tests-prove" standard of liability, *see Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1309 (11th Cir. 2010), and whether the district court should have submitted a "tests-prove" instruction to the jury. We need not address this question because the jury, by finding that Tritan does not have EA, necessarily also found that Appellants' tests did not prove that Tritan has EA.

No. 13-51087

were misleading, that they "deceived, or had the capacity to deceive a substantial segment of potential customers," and that the deception was "likely to influence the purchasing decisions of consumers." Accordingly, Appellants would be liable under the Lanham Act even if the evidence did not support a finding of actual falsity.

Appellants attempt to clear this hurdle by asserting: "a jury that has been wrongfully allowed, based on incorrect instructions, to determine that a statement is literally false cannot then be asked whether the same statement is misleading without the taint of the first answer destroying the reliability of the second." Appellants offer no authority for this proposition, and we fail to grasp its logic. A jury's view of whether a statement is misleading is not "tainted" simply because the jury is also *asked* whether that statement is false. To be sure, a jury that finds a statement to be false likely will find the same statement to be misleading. But the jury's conclusion would not result from any "taint"—it would result from the jury's assessment of the evidence. The jury in this case heard the evidence and was asked whether the Appellants' statements were false or misleading, and the jury answered both questions in the affirmative. The jury's finding that the statements were misleading serves as an independent basis for the district court's injunction, and we therefore find no reversible error on this point.

**IV.**

Appellants argue that the jury's verdict cannot stand because of three purported errors in the jury instructions and verdict form. We review challenges to jury instructions for abuse of discretion and afford the trial court great latitude in the framing and structure of jury instructions. *United States v. Carrillo*, 660 F.3d 914, 925–26 (5th Cir. 2011). In order to demonstrate reversible error, the party challenging the instruction must show that the charge "creates substantial and ineradicable doubt whether the jury has been

13

properly guided in its deliberations." *Taita Chem. Co. v. Westlake Styrene, LP*, 351 F.3d 663, 667 (5th Cir. 2003) (internal quotation marks omitted). "The instructions need not be perfect in every respect provided that the charge in general correctly instructs the jury, and any injury resulting from the erroneous instruction is harmless." *Rogers v. Eagle Offshore Drilling Servs., Inc.*, 764 F.2d 300, 303 (5th Cir. 1985). We do not reverse on the grounds of an erroneous instruction if the error "could not have affected the outcome of the case." *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1318 (5th Cir. 1994).

Appellants' first argument is based on the district court's jury instructions. The jury instructions advised the jury that it would be asked whether any of three statements were false or misleading. After listing the three statements, the instructions advised that the first statement could be found in Exhibit P108 and that the second statement could be found in Exhibit P110. Both of those exhibits are press releases describing the litigation between Eastman and Appellants. Appellants claim that the district court erred by allowing the jury to base its findings of falsity on statements Appellants made in press releases, because statements made in press releases are not commercial speech. The district court rejected this argument when it ruled on Appellants' Motion for Judgment, reasoning that the press releases were commercial speech because they "were clearly designed to bolster [Appellants'] image and reaffirm [Appellants'] primary business strategy; in other words, to 'influenc[e] consumers to buy [Appellants'] goods or services . . . .'" *Eastman Chem. Co.*, 969 F. Supp. 2d at 763 (quoting *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996)). We need not determine whether the press releases were commercial speech because Appellants failed to object during the charge conference to this aspect of the district court's jury instructions. As a result, Appellants have waived this argument. *Texas Beef Grp. v. Winfrey*, 201 F.3d 680, 689 (5th Cir. 2000) ("If a

party fails to object with specificity to a proposed instruction, the right to challenge the instruction on appeal is waived."); *see* Fed. R. Civ. P. 51.[4]

Appellants' second argument concerns the district court's instruction that "[a] false statement may be either literally false, or false by necessary implication."[5] Appellants contend that the Fifth Circuit has not adopted the "false by necessary implication" doctrine, and that it should not do so here. Under the "false by necessary implication" doctrine—which has been adopted by the First, Second, Third, Fourth, Ninth, and Federal Circuits—a statement may be false when, "considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 35 (1st Cir. 2000). We need not decide whether to adopt the "false by necessary implication" doctrine because, as already discussed, the jury found all of Appellants' statements to be both literally false and misleading. The jury's finding that the statements were misleading serves as an independent basis for the district court's injunction, regardless of whether the instruction about falsity was proper.

Appellants' third argument relates to the second statement submitted to the jury. The district court, instead of enumerating actual statements Appellants made about Tritan, asked the jury whether "statements to the effect that Tritan, or products made with Tritan, are dangerous to human health because they exhibit estrogenic activity" would be false or misleading.

---

[4] If error is not preserved, we may review for plain error. *Taita Chem. Co. v. Westlake Styrene*, LP, 351 F.3d 663, 668 (5th Cir. 2003). Appellants have not argued, much less demonstrated, that the district court's instruction constituted plain error.

[5] Appellants objected in the district court to the false by necessary implication instruction "on the grounds that the doctrine of falsity by necessary implication has not been adopted by any court in the Fifth Circuit and nor should it."

In the district court, Appellants argued that the statement could not be "literally false" because Appellants never actually made the statement. Counsel for Appellants stated:

> [The second statement] is not a statement that's actually made. And so, we would argue that to the extent that it's not actually made, it's only properly something that can be misleading, because something that's not actually made can't be literally false.

The district court explained that it was using this amalgamated statement because the alternative was to enumerate eighteen separate statements, and the court asked counsel for Appellants if he preferred that alternative. Counsel for Appellants responded: "No. If that's the alternative, then no." The district court then opined that enumerating such a large number of statements would be prejudicial to the defendant and burdensome on the jury, and counsel for Appellants responded that he preferred the amalgamated statement. On appeal, Appellants argue that the amalgamated statement cannot form the basis of Lanham Act liability because Appellants never made that particular statement.

As an initial matter, Appellants failed to preserve their argument. To preserve a jury instruction error, a party must make "a specific, formal, on-the-record objection . . . ." *Jimenez v. Wood Cnty., Tex.*, 660 F.3d 841, 845 (5th Cir. 2011) (en banc). Although Appellants expressed concern about the amalgamated statement, they quickly backtracked from their objection when presented with an alternative option. Appellants never proposed an alternative solution of their own. As a result, Appellants failed to make their position "sufficiently clear to the court to satisfy Rule 51's objection

requirement." *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 361 (5th Cir. 1995).

Even assuming arguendo that the objection was preserved, Appellants have not explained how the instruction affected the outcome of the case. Appellants argued in the district court that the amalgamated statement could not be literally false, but they conceded that the amalgamated statement could be misleading. Because the jury found the statement to be both false and misleading, Appellants were not harmed by any error. Moreover, Appellants do not deny that the amalgamated statement accurately summarizes statements Appellants made, and the injunction goes no further than to enjoin statements matching the amalgamated statement. Accordingly, any error was harmless.

For the foregoing reasons, we AFFIRM.