**UNITED STATES of America,
Plaintiff,**

**v.**

**VASCULAR SOLUTIONS, INC.,
(1) and, Howard Root, (2)
Defendants.**

**Case No. SA-14-CR-926-RCL**

United States District Court,
W.D. Texas, San Antonio Division.

Signed January 27, 2016

---

89.  Rec. Doc. 22.

Bud Paulissen, Christina Laura Playton, United States Attorney's Office, San Antonio, TX, Charles John Biro, Michael S. Blume, Timothy T. Finley, U.S. Department of Justice, Washington, DC, for Plaintiff.

Christopher L. Peele, The Ashcroft Law Firm, Johnny K. Sutton, Ashcroft Sutton Ratcliffe, LLC, Austin, TX, Jeffrey S. Bucholtz, John C. Richter, Michael R. Pauze, Robert K. Hur, King & Spalding LLP, Washington, DC, Dulce J. Foster, John W. Lundquist, Kevin C. Riach, Fredikson & Byron, P.A., Minneapolis, MN, John E. Murphy, Attorney At Law, San Antonio, TX, for Defendants.

## MEMORANDUM AND ORDER

ROYCE C. LAMBERTH, United States District Judge

This case comes before the Court on defendants' Motion [158] in Limine to Set Ground Rules for Trial Regarding the First Amendment, the government's response thereto, and defendants' reply in support thereof, as well as defendants' Motion [160] to Exclude Evidence of the Company's Subjective Intent to Market the Vari-Lase Device, the government's response [181] and defendants' reply [192] thereto. Upon consideration of these filings, the applicable law, and the entire record in this case, defendants' motions are **DENIED** for the reasons set forth below.

## I. BACKGROUND

Defendants sell, under the brand name Vari-Lase, a medical device which permanently closes poorly-performing veins (often called varicose veins) using a laser. This process allows healthier veins to move blood. Human legs have two major vein networks—the deep venous system, which is closer to the bone, and the superficial one, which is closer to the skin. Veins connecting the two systems are called perforator veins. The government's position is that the FDA approved Vari-Lase devices for treatment of superficial veins only.

Defendants' superseding indictment features five counts. Counts Two through Five are misbranding counts, which allege that defendants caused the introduction into interstate commerce of misbranded Vari-Lase medical devices. The devices were allegedly misbranded in that (1) defendant Vascular Solutions, Inc. had failed to provide the Food and Drug Administration ("FDA") with required notification of a new intended use, namely use with per-

forator veins, and (2) the devices' labeling lacked adequate directions for that new intended use. Count One alleges a conspiracy to commit the above substantive offenses, and to defraud the United States by concealing the sale of these devices for the unapproved use.

In the motions under consideration here, defendants present two arguments. Noting that cases like *U.S. v. Caronia*, 703 F.3d 149 (2d Cir.2012), have held that the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., does not criminalize mere truthful promotion of off-label uses for FDA-approved medical devices, defendants now assert that the government's case against them risks violating the First Amendment in various ways. Defendants propose the following remedy: First, the Court "should hold that speech is constitutionally protected if 'it is either true or only *potentially* misleading,' Byrum v. Landreth, 566 F.3d 442, 446 (5th Cir.2009) (emphasis added), and that speech loses protection only if the government proves beyond a reasonable doubt that it is actually or inherently misleading." Second, the Court "should hold that speech about an off-label use of a medical device is not misleading merely because FDA has not approved that off-label use or reviewed or approved the speech." Third, the Court should hold that for the government to prove a communication actually misleading, it must show "that the communication misled a substantial subset of its intended audience." Fourth, the Court "should hold that speech does not lose constitutional protection 'merely because it fails to tell the whole truth about [a] product.'" *Dunagin v. City of Oxford, Miss.*, 718 F.2d 738, 743 (5th Cir.1983). Finally, "the Court should exercise its discretion to order the government to disclose the speech on which it intends to rely. Then, the Court should determine whether a jury could

find beyond a reasonable doubt that each communication was false or misleading."

Defendants also contend that the "intended use" of Vari-lase may only be determined by examining communications and representations they made to the marketplace because, they explain, 21 C.F.R. § 801.4 says the "intended use" of a device is determined by the "objective intent of the persons legally responsible for the devices," and "objective intent" cannot be demonstrated by internal deliberation or communication. Consequently, defendants argue, the Court should exclude what they deem evidence of mere "subjective intent," namely, evidence "regarding the company's and its employees' hopes or expectations with respect to use of the Vari-Lase device, knowledge of how the Vari-Lase device would be used, and communications regarding the use of the Vari-Lase device that were internal to the company and not made to the market."

## II. LEGAL STANDARDS

The Supreme Court has unanimously held that "[t]he First Amendment ... does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993).

As relevant here, "intended use" is defined as follows:

> The words intended uses or words of similar import in §§ 801.5, 801.119, and 801.122 refer to the objective intent of the persons legally responsible for the labeling of devices. The intent is determined by such persons' expressions or may be shown by the circumstances surrounding the distribution of the article. This objective intent may, for example, be shown by labeling claims, advertising matter, or oral or written statements by such

persons or their representatives. It may be shown by the circumstances that the article is, with the knowledge of such persons or their representatives, offered and used for a purpose for which it is neither labeled nor advertised. The intended uses of an article may change after it has been introduced into interstate commerce by its manufacturer. If, for example, a packer, distributor, or seller intends an article for different uses than those intended by the person from whom he received the devices, such packer, distributor, or seller is required to supply adequate labeling in accordance with the new intended uses. But if a manufacturer knows, or has knowledge of facts that would give him notice that a device introduced into interstate commerce by him is to be used for conditions, purposes, or uses other than the ones for which he offers it, he is required to provide adequate labeling for such a device which accords with such other uses to which the article is to be put.

21 C.F.R. § 801.4

## III. ANALYSIS

The government has represented that it "does not plan to use promotional speech to doctors to prove the intended use of the devices for perforator vein ablation," and will instead rely on conduct alone. The government says that though it is not obliged to do this, it has done so in order to "eliminate[ ] any possibility that the misbranding offenses criminalize promotional speech." Should the government change its plan and decide to use promotional speech to prove intended use, or should the Court become concerned that the government is indeed pursuing a theory that the FDCA prohibits even truthful non-misleading off-label promotion, the Court will address this issue at that time.

■ The government does represent, however, that it currently plans to, but need not (due to the existence of other evidence), rely on statements to doctors for the purpose of proving the conspiracy charge, noting that a lawful act may serve as the "overt act" in furtherance of a conspiracy. *See United States v. Archbold-Newball,* 554 F.2d 665, 684 (5th Cir.1977) ("A prosecution for conspiracy is not the equivalent of a prosecution for having done or performed the overt act, for an overt act may not, itself, be unlawful at all.") (citing *Yates v. United States,* 354 U.S. 298, 334, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1956)). Defendants respond that, "as a matter of conspiracy law, truthful speech is not an act taken 'to effect the object of the conspiracy.'" Defendants offer no support for this proposition, and there is ample support to the contrary. *See, e.g., United States v. Donner,* 497 F.2d 184, 192 (7th Cir.1974) ("While that which occurred at the November 20th press conference constituted words rather than action, constitutionally protected speech may nevertheless be an overt act in a conspiracy charge.") (citing *United States ex rel. Epton v. Nenna,* 446 F.2d 363, 368 (2d Cir.1971), cert. denied, 404 U.S. 948, 92 S.Ct. 282, 30 L.Ed.2d 265); *United States v. Lanier,* 920 F.2d 887, 893 n. 48 (11th Cir.1991) (citing *Donner*). The Court therefore sees no First Amendment threat from this proposed use of speech.

■ With respect to defendants' invitation to the Court to hold, despite their failure to identify any issue to be resolved, something the Fifth Circuit has already held, the Court declines, as "[t]he exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy," and "a federal court [lacks] the power to render advisory opinions." *U.S. Nat'l Bank of Or. v. Indep. Ins.*

*Agents of Am., Inc.,* 508 U.S. 439, 446, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (citing *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)).

With respect to defendants' request that the Court hold that speech about off-label use is not misleading merely because the FDA has not approved that off-label use or reviewed or approved the speech, the Court agrees that such a principle goes without saying—would that it had—but sees no evidence that the government has or will argue to the contrary. The Court concludes that any risk of such argument can be addressed by an appropriate jury instruction.

Defendants also asked the Court to hold that "to prove that a communication was actually misleading, the government must prove that the communication misled a substantial subset of its intended audience." Defendants correctly observe that such proof is required in false advertising cases brought under the Lanham Act, 10 U.S.C. § 1051 et seq. *See, e.g., Pizza Hut, Inc. v. Papa John's Int'l, Inc.,* 227 F.3d 489, 497 (5th Cir.2000). They proceed to argue that because that statute's "prohibition on false or misleading promotion is constitutional only insofar as it does not 'intrude on First Amendment values,' *Eastman Chem. Co. v. Plastipure, Inc.,* 775 F.3d 230, 237 (5th Cir.2014), these cases are useful precedent for determining what qualifies as actually misleading speech in off-label promotion." But the Lanham Act's requirement that the government show that "a substantial number of consumers were actually misled" is explicit in that statute and absent, as far as the Court can tell, from the FDCA. Furthermore, defendants have provided no support for the proposition that the Lanham Act's conception of misleading represents a constitutional floor that must be imported to the FDCA. *See Eastman*

*Chem. Co. v. Plastipure, Inc.,* 775 F.3d at 237 ("Application of the Lanham Act to Appellants' promotional statements will not stifle academic freedom or intrude on First Amendment values.").

With respect to defendants' request that the Court to hold that "speech does not lose constitutional protection 'merely · because it fails to tell the whole truth about [a] product,'" the Court sees no evidence that the government has presented or will present an argument to the contrary. As noted above, the government has most recently represented that it will rely on promotional speech for the conspiracy charge alone, and even if such speech is in particular instances constitutionally protected, that speech may nevertheless be relevant and admissible as evidence of an overt act in furtherance of the charged conspiracy. *See supra.*

■ Regarding defendants' request that the Court exercise its discretion to instruct the government to disclose "the speech on which it intends to rely" to allow the Court itself to decide whether the communication was false or misleading, the Court declines. Defendants have offered no evidence that such a drastic measure—one which would create a minitrial for every piece of evidence—is required, especially where the government has represented that it plans to rely on statements for the conspiracy charge alone, a use which appears permissible on its face.

■ Finally, as to defendants' motion to exclude evidence of subjective intent, defendants neglected to cite *Reeves v. Acromed Corp.,* in which this Circuit observed that "FDA regulations require manufacturers to provide appropriate labeling if the manufacturer *has reason to believe* that its medical device might be used for purposes different from the purposes for which the device is approved." 44

F.3d 300 (5th Cir.1995) (citing 21 C.F.R. § 801.4) (emphasis added).

Even were this Court at liberty to depart from the Fifth Circuit's position, however, it would still deny defendants' motion; though § 801.4 indeed says that "objective intent may, for example, be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives," nowhere does the regulation state that such statements or claims cannot be used to show objective intent unless they were published to the marketplace. To see the absurdity of defendants' argument, consider a hypothetical in which a medical device manufacturer sells device D, which is approved for use A but frequently prescribed by doctors for off-label use B. If the manufacturer creates a bumper sticker with the words "I intend D to be used for B: Prescribe D for B Today," by defendants' logic that poster is inadmissible evidence of subjective intent so long as it sits in his briefcase, but admissible evidence of objective intent once he sticks it on his car. The Court is not persuaded that there is a legally relevant distinct ion here; in either scenario, the defendant has manifested into the physical world "oral or written statements" that may be weighed as evidence of objective intent. The hypothetical manufacturer defendants claim to be worried about—the one who learns over the phone from a customer-physician that the physician is ordering a device approved for use A but intends to use it for use B, and must now consider whether he can legally fill the order—would face no peril from such a rule because he made no oral or written statement from which objective intent could be proven.

**CONCLUSION**

As explained above, defendants' concerns appear largely meritless or not legally cognizable. To the extent those concerns

have merit, the Court concludes that any risk will be sufficiently addressed by appropriate jury instructions. As a result, defendants' Motion [158] in Limine to Set Ground Rules for Trial Regarding the First Amendment and its Motion [160] in Limine to Exclude Evidence of the Company's Subjective Intent to Market the Vari-Lase Device are both **DENIED.**

It is **SO ORDERED.**