DAVID HITTNER, United States District Judge
Pending before the Court are Plaintiff's Motion For Permanent Injunction (Document No. 172), Rust-Oleum's Motion for Entry of Judgment Denying ITW Any Monetary Relief (Document No. 176), and Plaintiff's Motion for Prejudgment and Post-Judgment Interest (Document No. 174). Having considered the motions, submissions, and applicable law, the Court determines the motions should be granted in part and denied in part.
*955 I. BACKGROUND
This is a false advertising case brought pursuant to the Lanham Act. Plaintiff Illinois Tool Works, Inc. ("ITW") and Defendant Rust-Oleum Corporation ("Rust-Oleum") sell competing water repellant products for use on vehicle windshields. ITW's product is named "Rain-X" and Rust-Oleum's product is named "RainBrella." As part of Rust-Oleum's advertising campaign for RainBrella, Rust-Oleum has made three statements in its advertising relevant to this lawsuit: (1) that RainBrella "Lasts 2X Longer than Rain-X" ("2X Claim"); (2) "And remember, RainBrella lasts twice as long as Rain-X. We ran it through 100 car washes to prove it." ("Twice As Long Claim"); and (3) RainBrella "Lasts Over 100 Car Washes" ("Over 100 Claim") (collectively, the "Claims").
Based on the foregoing, on July 7, 2017, ITW filed this lawsuit asserting Lanham Act claims for false and misleading advertising against Rust-Oleum. On July 16, 2018, the Court commenced a five-day jury trial. The Court submitted questions, definitions, and instructions to the jury. In response, the jury made findings that the Court received, filed, and entered into the record. The jury found in favor of ITW on all questions submitted to them.[1] Following the jury verdict, on August 1, 2018, ITW filed a motion for a permanent injunction. On August 28, 2018, ITW moved for prejudgment and post-judgment interest. On August 30, 2018, Rust-Oleum moved for an entry of judgment denying ITW monetary relief.
II. LAW AND ANALYSIS
Following the jury's verdict, (1) ITW moves for a permanent injunction; (2) Rust-Oleum moves for an entry of judgment denying ITW any monetary relief; and (3) ITW moves for prejudgment and post-judgment interest. The Court addresses each motion in turn.
A. Permanent Injunction
ITW moves for a permanent injunction seeking to: (1) enjoin Rust-Oleum from disseminating the Claims in advertising materials in connection with RainBrella ("Dissemination Provision"); (2) require Rust-Oleum to recall all advertising materials which contain the Claims ("Recall Provision"); and (3) require Rust-Oleum to destroy all advertising materials containing the Claims ("Destruction Provision"). Rust-Oleum contends a permanent injunction is not proper because there is no evidence of irreparable injury to ITW and the balance of hardships does not weigh in favor of granting a permanent injunction. A plaintiff seeking a permanent injunction must establish the following elements: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C. , 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).
1. Irreparable Injury
Rust-Oleum contends ITW did not prove irreparable injury. ITW contends it has and will continue to suffer irreparable injury if Rust-Oleum continues to make false and misleading advertising claims. The potential for ongoing harm if a defendant continues to make similar false or misleading statements and the likely impossibility of quantifying the extent of harm suffered as a result of false or misleading statements weigh in favor of finding *956 irreparable injury. Eastman Chemical Co. v. PlastiPure, Inc. , 969 F.Supp.2d 756, 769 (W.D. Tex. 2013) (Sparks, J.), aff'd Eastman Chemical Co v. Plastipure, Inc. , 775 F.3d 230 (2014).
The jury found Rust-Oleum is liable for false or misleading advertising for each of the Claims.[2] In finding that Rust-Oleum is liable for false or misleading advertising, the jury found ITW was harmed as a result of each of the Claims.[3] At trial, there was testimony that ITW's reputation and brand was harmed as a result of the Claims.[4] The Court finds the potential for ongoing harm if Rust-Oleum continues to make the Claims and the likely impossibility of quantifying such harm weigh in favor of finding irreparable injury. The Court therefore finds ITW has proven an irreparable injury.[5]
2. Balance of Hardships
Rust-Oleum contends the balance of hardships between Rust-Oleum and ITW does not weigh in favor of issuing a permanent injunction because ITW's proposed permanent injunction is overbroad[6] and would require Rust-Oleum to expend significant amounts of money. Specifically, as to the Destruction Provision, Rust-Oleum contends destroying all advertising material containing the Claims would require it to repackage all its RainBrella product, costing between $40,000 to $50,000. As to the Recall provision, Rust-Oleum contends recalling all RainBrella product would greatly damage its ability to continue as a viable product and would require Rust-Oleum to identify all retailers who still have RainBrella product, buy back the product, and pay for freight and labor. ITW contends an injunction would protect its interest in preventing Rust-Oleum from continuing to make false and misleading commercial advertisements.
Preventing a party from "repeating statements a jury found to be false and misleading" weighs in favor of granting an injunction. Eastman , 969 F.Supp.2d at 769. The jury found the Claims were false or misleading advertisements.[7] The evidence introduced at trial showed Rust-Oleum spent $1,318,023 on advertising. There is no evidence regarding how much RainBrella product is still on the market or the cost to Rust-Oleum in complying with the Recall Provision. Having found ITW will be irreparably harmed if Rust-Oleum continues to make the Claims the jury found to be false or misleading, the Court finds the balance of hardships weighs in favor issuing a permanent injunction. The Court, *957 however, finds the balance of hardships does not weigh in favor of recalling all RainBrella product containing the Claims. Accordingly, ITW's motion for a permanent injunction is denied as to the Recall Provision.[8]
3. Remaining Elements
The Court will briefly address the remaining elements because ITW has the burden of proof on the necessity for a permanent injunction. First, ITW contends the monetary damages the jury awarded are inadequate to compensate it for its injuries because it is difficult to quantify the extent of harm to its reputation and goodwill as a result of the Claims. Fringe Ins. Benefits, Inc. v. Beneco, Inc. , No. A-13-CV-034-AWA, 2015 WL 631181, at *8 (W.D. Tex. Feb. 11, 2015) (Austin, Mag. J.); Eastman , 969 F.Supp.2d at 768-69. The Court finds ITW has established that remedies available at law, such as monetary damages, are alone inadequate to compensate it for its injuries in this case.
Finally, "the public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act." Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C. , 83 F.Supp.2d 810, 832 (S.D. Tex. 1999) (Rosenthal, J.). ITW was the prevailing party in this lawsuit because the jury found the Claims constituted false or misleading advertising. ITW seeks a permanent injunction to enforce the Lanham Act. The Court therefore finds ITW has established a permanent injunction in this case would serve the public interest. In sum, ITW has established all four elements to demonstrate that it is entitled to a permanent injunction in this case.[9]
4. Scope of Permanent Injunction
Rust-Oleum contends ITW's proposed permanent injunction is overbroad. ITW contends its proposed permanent injunction is not overbroad in this case. The scope of an injunction "is dictated by the extent of the violation established" and so a court "must narrowly tailor an injunction *958 to remedy the specific action which gives rise to the order." John Doe # 1 v. Veneman , 380 F.3d 807, 818 (5th Cir. 2004). At the same time, a business " 'once convicted of unfair competition ... should thereafter be required to keep a safe distance away from the margin line even if that requirement involves a handicap as compared with those who have not disqualified themselves.' " Mary Kay, Inc. v. Weber , 661 F.Supp.2d 632, 641 (N.D. Tex. 2009) (Fish, J.) (quoting Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc. , 659 F.2d 695, 705 (5th Cir. 1981) ). In particular, Rust-Oleum contends ITW's proposed permanent injunction: (1) does not allow for the possibility that RainBrella could be modified to substantiate the Claims; (2) should not include the prohibition on the Over 100 Claim because ITW argued that the Over 100 Claim is misleading, not false; (3) should not include "Protects Through 100 Car Washes" because it was not litigated at trial; and (4) improperly includes Rust-Oleum's NEVERWET product that was not litigated at trial. Having found ITW has established it is entitled to a permanent injunction and having considered the contentions, submissions, and applicable law, the Court enters a permanent injunction, as reflected in the final judgment, that is narrowly tailored to remedy the specific violations at issue in this case.
B. Damages
Rust-Oleum moves for an entry of judgment denying ITW any monetary damages. Damages awarded for false advertising under the Lanham Act are subject to the principles of equity and must be compensatory not punitive. 15 U.S.C. § 1117(a). Rust-Oleum contends ITW is not entitled to a monetary award of: (1) disgorgement of profits or; (2) corrective advertising.[10] ITW contends the Court should uphold the jury's monetary awards. The Court first addresses the jury's award of profits, then turns to the jury's award for corrective advertising.
1. Profits
A plaintiff who proves false advertising may recover the defendant's profits. 15 U.S.C. § 1117(a). Courts consider the following factors when deciding whether an award of profits is appropriate: (1) whether the defendant had the intent to confuse or deceive; (2) whether sales have been diverted; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff in asserting its rights; (5) the public interest in making the misconduct unprofitable; and (6) whether it is a case of palming off. Pebble Beach Co. v. Tour 18 I Ltd. , 155 F.3d 526, 554 (5th Cir.1998). Moreover, a plaintiff must prove that the defendant benefitted from its alleged infringement. Logan , 263 F.3d at 464. A jury is presumed to follow a court's instructions. Russell v. Plano Bank & Trust , 130 F.3d 715, 721 (5th Cir. 1997).
The jury was instructed that it "can award ITW the profits Rust-Oleum earned as a result of its false advertising if [it] finds ITW has shown by a preponderance of the evidence that Rust-Oleum benefited from its false advertising."[11] The jury was further instructed it "may award Rust-Oleum's profits even if Rust-Oleum's costs exceed its profits."[12] There was evidence introduced at trial on Rust-Oleum's revenues, cost of goods sold, and advertising *959 expenditures. Using the instructions and evidence presented at trial, the jury was able to craft an award for disgorgement of profits.
The jury found ITW is entitled to recover profits in the amount of $392,406 from Rust-Oleum for Rust-Oleum's false advertisements.[13] The jury also found Rust-Oleum "acted maliciously, fraudulently, deliberately, or willfully."[14] There is no evidence that ITW's sales were diverted, which weighs against awarding profits. However, there is a strong public interest in making false advertising unprofitable and there was no unreasonable delay in ITW asserting its rights. Although the Court found ITW is entitled to a permanent injunction, the injunction is inadequate to remedy any past harm ITW suffered as a result of the Claims. The Court therefore finds the jury's award of profits falls within the principles of equity in this case. Thus, the Court declines to disturb the jury's verdict awarding ITW disgorgement of profits in the amount of $392,406 from Rust-Oleum. See Clearline Tech. Ltd., v. Cooper B-Line, Inc. , Civil Action No. 4:11-cv-1420, 2014 WL 4185770, *4-5 (S.D. Tex. Aug. 19, 2014) (Ellison, J.) (declining to disturb jury verdict of disgorgement of profits in trademark infringement case where the jury was presented with sufficient evidence and could have reached its award amount in a number of ways). Accordingly, Rust-Oleum's motion is denied as to the jury's verdict awarding ITW disgorgement of profits in the amount of $392,406.
2. Corrective Advertising
Rust-Oleum contends ITW is not entitled to damages for corrective advertising because ITW did not engage in pretrial corrective advertising and there was no evidence ITW plans to engage in corrective advertising in the future. ITW contends it is entitled to the jury's award of corrective advertising because there was sufficient evidence for the jury to find ITW would engage in corrective advertising in the future. Alternatively, Rust-Oleum requests the Court reduce the jury's award for corrective advertising to twenty-five percent of Rust-Oleum's advertising expenditures. Damages for corrective advertising may be awarded for costs that have been spent on pretrial corrective advertising or for prospective corrective advertising. ClearChoice Holdings, LLC v. Clear Choice Dental, PLLC , Civil Action No. H-14-03569, 2016 WL 8136622, at *6 (S.D. Tex. Dec. 23, 2016) (Johnson, Mag. J.). "Prospective corrective advertising is 'the amount the plaintiff would be required to spend in the future to dispel the confusion caused by defendant's infringement.' " Id.
The jury found ITW is entitled to an award for corrective advertising in the amount of $925,617.[15] It is undisputed ITW did not engage in any pretrial corrective advertising. Although ITW did not introduce evidence at trial on any amount it would spend on corrective advertising in the future, there was no evidence that ITW would not engage in corrective advertising. There was also evidence introduced at trial that showed Rust-Oleum spent $1,318,023 on advertising.[16] Given the evidence submitted at trial, the Court finds the jury had legally sufficient evidence to find ITW would engage in corrective advertising in the future. The Court however finds the jury's award for corrective advertising in the amount of $925,617 is punitive, *960 instead of compensatory. Rather, the Court, in its discretion, finds a corrective advertising award in the amount of twenty-five percent of Rust-Oleum's advertising expenditures falls within the principles of equity in this case. See Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co. , 561 F.2d 1365, 1374 (10th Cir. 1977) (explaining that twenty-five percent of the amount the defendant spent on advertising is an appropriate amount to award a plaintiff for prospective corrective advertising); ClearChoice Holdings , 2016 WL 8136622, at *6 (explaining that an award for corrective advertising should be compensatory and not punitive). Accordingly, Rust-Oleum's motion is granted as to its request to reduce ITW's corrective advertising award to $329,505.75.[17]
C. Prejudgment and Post-judgment Interest
ITW moves for prejudgment and post-judgment interest. Rust-Oleum contends prejudgment interest is not appropriate in this case because the jury did not award ITW lost profits.[18] As to prejudgment interest, the Lanham Act is silent as to prejudgment interest in false advertising cases. 15 U.S.C. § 1117(a). Courts award prejudgment interest in Lanham Act cases where "but for" the wrongful conduct, the plaintiff would have had the damages amount to invest. Clearline Techs. Ltd. v. Cooper B-Line, Inc. , 948 F.Supp.2d 691, 713 (S.D. Tex. 2013) (Ellison, J.). The jury awarded ITW monetary damages for disgorgement of Rust-Oleum's profits and prospective corrective advertising. It is undisputed ITW was not awarded damages for any amount of lost profits or money ITW already spent on corrective advertising. The Court therefore finds ITW was not awarded monetary damages that ITW lost opportunity to invest. Thus, the Court declines to award prejudgment interest in this case. Accordingly, ITW's motion is denied as to prejudgment interest.
As to post-judgment interest, an award of post-judgment interest is governed by 28 U.S.C. § 1961. Tricon Energy Ltd. v. Vinmar Int'l, Ltd. , 718 F.3d 448, 456-57 (5th Cir. 2013). Section 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court" and "such interest shall be calculated from the date of entry of the judgment." 28 U.S.C. § 1961(a). Further, 28 U.S.C. § 1961 details which rate to use and states that "[t]he Director of the Administrative Office of the United States Courts shall distribute notice of that rate." 28 U.S.C. § 1961(a). "Interest shall be computed daily to the date of payment ... and shall be compounded annually." Id. § 1961(b). An award of post-judgment interest is not discretionary. Meaux Surface Prot., Inc. v. Fogleman , 607 F.3d 161, 173 (5th Cir. 2010). Because this is a civil case in federal district court, post-judgment interest shall be awarded pursuant to 28 U.S.C. § 1961. The post-judgment interest rate on the date of judgment, as calculated by the United States Courts pursuant to 28 U.S.C. § 1961, is 2.66%.[19]
III. CONCLUSION
Based on the foregoing, the Court hereby *961 ORDERS that Plaintiff's Motion For Permanent Injunction (Document No. 172) is GRANTED IN PART AND DENIED IN PART. The permanent injunction is denied as to recalling RainBrella product and granted as specified in the final judgment. The Court further
ORDERS that Rust-Oleum's Motion for Entry of Judgment Denying ITW Any Monetary Relief (Document No. 176) is GRANTED IN PART AND DENIED IN PART . The motion is denied as to the jury's award of disgorgement of profit in the amount of $392,406 and granted as to Rust-Oleum's request to reduce the corrective advertising award to $329,505.75. The Court further
ORDERS that Plaintiff's Motion for Prejudgment and Post-Judgment Interest (Document No. 174) is GRANTED IN PART AND DENIED IN PART. The motion is denied as to prejudgment interest and granted as to post-judgment interest. The Court further
ORDERS that Illinois Tool Works Inc. shall recover $721,911.75 from Rust-Oleum Corporation. The Court further
ORDERS that Illinois Tool Works Inc. shall recover post-judgment interest on all amounts allowable by law at the rate of 2.66%, from the date of judgment until the date of payment.[20]
The Court will issue a separate Final Judgment and Permanent Injunction.

Jury Charge , Document No. 157.

Jury Charge , Document No. 157 at 11, 13, 15.

Jury Charge , Document No. 157 at 11, 13, 15.

See Plaintiff's Motion for Permanent Injunction , Document No. 172 at 2.

Rust-Oleum also contends a permanent injunction is not proper because there was insufficient evidence that ITW suffered harm and that the Over 100 Claim was material. The Court views the record in favor of upholding the jury verdict. Pizza Hut, Inc. v. Papa John's Int'l, Inc. , 227 F.3d 489, 500 (5th Cir. 2000) ("In examining the record evidence [the court] must view it the way that it most favorable to upholding the verdict."). Based on the evidence submitted at trial, the Court finds there was sufficient evidence to support the jury's findings that the Over 100 Claim was material and that ITW was harmed as a result of the Claims. See Logan v. Burgers Ozark Country Cured Hams Inc. , 263 F.3d 447, 463 (5th Cir. 2001) (holding there was sufficient evidence for the jury to infer a competitor's false advertising injured the plaintiff even though plaintiff did not prove any actual losses).

The Court considers Rust-Oleum's contentions as to the scope of ITW's proposed permanent injunction infra Part II.A.4.

Jury Charge , Document No. 157 at 11, 13, 15.

The Recall Provision states:
Defendant, Rust-Oleum Corporation, its officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of the above, are permanently enjoined from:
1. disseminating, in any form or medium in connection with Defendant's RainBrella product or its equivalent, any claim that the RainBrella product: (a) "Lasts 2X Longer" than or lasts twice as long as Plaintiff's RAIN-X product; (b) "Lasts 2X Longer" than or twice as long as the product of a "leading competitor"; or (c) any variation thereof.
2. disseminating, in any form or medium in connection with Defendant's RainBrella product or its equivalent, any claim that: (a) "Rainbrella lasts twice as long as RAIN-X. We ran it through 100 car washes to prove it" or (b) any variation thereof; and
3. disseminating, in any form or medium in connection with Defendant's RainBrella product or its equivalent, any claim that the Rainbrella product: (a) "Lasts Over 100 Car Washes"; (b) "Protects Through 100 Car Washes"; or (c) any variation thereof.
[ Proposed] Order Granting Permanent Injunction Against Defendant , Document No. 172-2 at 2-3.

Rust-Oleum also alleges it has removed the Claims from various online sources. The standard for determining whether a permanent injunction is unnecessary because of a defendant's voluntary actions is "stringent, and it is only met if 'subsequent events [make] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' " T-Mobile US, Inc. v. AIO Wireless LLC , 991 F.Supp.2d 888, 929 (S.D. Tex. 2014) (Rosenthal, J.) (quoting Allied Home Mortg. Corp. v. Donovan , No. H-11-3864, 2012 WL 3276978, at *4 (S.D. Tex. Aug. 8, 2012) (Miller, J.) ). The Court finds Rust-Oleum has not met the stringent standard required to show a permanent injunction is unnecessary in this case as a result of Rust-Oleum's actions.

Rust-Oleum also contends ITW is not entitled to monetary damages because ITW did not prove the threshold element that ITW suffered any harm due to the Claims. Having found there is sufficient evidence to uphold the jury's finding that ITW was harmed by the Claims, the Court need not address this contention as to damages. See supra Part II.1 at n.5.

Jury Charge , Document No. 157 at 19.

Jury Charge , Document No. 157 at 19.

Jury Charge , Document No. 157 at 19.

Jury Charge , Document No. 157 at 22.

Jury Charge , Document No. 157 at 21.

See Rust-Oleum's Motion for Entry of Judgment Denying ITW Any Monetary Relief , Document No. 176 at 9.

$329,505.75 divided by $1,318,023 Rust-Oleum spent on advertising equals twenty-five percent.

Rust-Oleum does not dispute an award of post-judgment interest.

Post-Judgment Interest Rates - 2018 , U.S. District & Bankr. Cts. , S. District Tex. , http://www.txs.uscourts.gov/page/post-judgment-interest-rates-2018 (last modified October 26, 2018).

Also pending before the Court are Defendant's Motion to Strike Plaintiff's Reply in Support of Its Motion for Permanent Injunction (Document No. 180) and Defendant's Motion to Strike Plaintiff's Reply in Support of Motion for Prejudgment and Post-Judgment Interest (Document No. 187). Having considered the motions, submissions, and applicable law, the motions are denied.