# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 3, 2014

Lyle W. Cayce
Clerk

No. 13-50632

BENJAMIN OROZCO,

Plaintiff-Appellee,

v.

CRAIG PLACKIS,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, and HIGGINBOTHAM and ELROD, Circuit Judges.

CARL E. STEWART, Chief Judge:

Benjamin Orozco worked in a Craig O's Pizza and Pasteria ("Craig O's") franchise owned by Sandra and Arnold Entjer. After Sandra made changes to Orozco's salary, he quit and filed suit against the Entjers, alleging multiple violations of the Fair Labor Standards Act ("FLSA"). Orozco settled with the Entjers, and Craig Plackis, the founder of Craig O's, was added as a defendant. A jury trial was held and the jury found in favor of Orozco. Thereafter, Plackis filed a motion for judgment as a matter of law, which the magistrate judge ("MJ") denied. For the following reasons, we REVERSE the denial of the motion for judgment as a matter of law and RENDER judgment in favor of Plackis.

No. 13-50632

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Plackis owns Roxs Enterprises, Inc. ("Roxs"), the franchisor of Craig O's, with his wife, Roxana. Craig O's currently consists of five restaurants, including a location owned by Plackis in southwest Austin, Texas (hereinafter, "Southwest location"). In 2005, Pane e Vino, Inc., which is owned by the Entjers, entered into a Franchise Agreement with Roxs and purchased a Craig O's franchise. The Entjers opened their restaurant in San Marcos, Texas (hereinafter, "San Marcos location"). Sandra hired Orozco as a cook for the restaurant. Initially, Orozco was paid $1,200 bi-weekly; however, in 2007, his salary was changed to $1,050. Then, in 2011, Sandra changed Orozco's salary to $10 per hour. Thereafter, Orozco quit.

### B. Procedural Background

Orozco initially filed suit against the Entjers and Pane E Vino, Inc., alleging that, during his employment from 2008 through 2011, he was not paid overtime or minimum wage as required under the FLSA. Orozco settled with the Entjers and added Plackis as a defendant. The parties agreed to a jury trial conducted by the MJ. The jury returned a verdict in favor of Orozco, finding that: (1) Plackis was Orozco's employer; (2) Plackis was part of an enterprise covered by the FLSA; (3) Orozco did not fall within any of the exemptions to coverage under the FLSA; and (4) Plackis willfully violated the FLSA. Plackis moved for judgment as a matter of law, which the MJ denied. Plackis subsequently renewed his motion for judgment as a matter of law, which the MJ again denied. Plackis timely appealed. On appeal, Plackis challenges the first two findings by the jury—specifically, whether he was Orozco's employer and whether Orozco sufficiently established enterprise coverage. In addition, Plackis contends that the jury instructions were improper. We will address each argument in turn.

2

No. 13-50632

## DISCUSSION

### A. Standard of Review

We review de novo the MJ's denial of Plackis's motion for judgment as a matter of law. *See Arsement v. Spinnaker Exploration Co.*, 400 F.3d 238, 248 (5th Cir. 2005). "A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008) (per curiam) (citation and internal quotation marks omitted). "A motion for judgment as a matter of law should be granted if there is no legally sufficient evidentiary basis for a reasonable jury to find for a party." *Id.* (citation and internal quotation marks omitted). "[T]he evidence, as well as all reasonable inferences from it, are viewed in the light most favorable to the verdict." *Arsement*, 400 F.3d at 249 (citation and internal quotation marks omitted). Moreover, we may not engage in "credibility determinations or weigh evidence." *Id.* (citation and internal quotation marks omitted). Our review of jury verdicts "is especially deferential." *See Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 498–99 (5th Cir. 2012) (citation and internal quotation marks omitted). Nonetheless, "we will not sustain a jury verdict based only on a 'mere scintilla of evidence.'" *SMI Owen Steel Co.*, 520 F.3d at 437 (citation omitted).

### B. Applicable Law

Under the FLSA, an employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). We rely on the economic reality test when determining a party's status as an employer under the FLSA. *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). Under the economic reality test, we evaluate "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4)

3

maintained employment records." *Id.* at 355 (citation and internal quotation marks omitted). However, a party need not establish each element in every case. *Id.* at 357. "The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 251 (5th Cir. 2012) (citation and internal quotation marks omitted). Moreover, "[t]he remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (per curiam), *modifying* 861 F.2d 450 (5th Cir. 1980). In joint employer contexts, each employer must meet the economic reality test. *Gray*, 673 F.3d at 355.

### C. Analysis

Plackis argues that it is improper to find an employer/employee relationship when none of the factors in the economic reality test are met. In addition to testimony adduced at trial, Plackis relies on the Franchise Agreement which demonstrates, in his view, that Sandra retained control over the San Marcos location. We agree that the MJ should have granted Plackis's motion for judgment as a matter of law because there was legally insufficient evidence for a reasonable jury to find that Plackis was Orozco's employer under the FLSA.

As an initial matter, we note that Orozco concedes that he failed to provide any evidence suggesting that Plackis maintained Orozco's employment records—the fourth element of the economic reality test. However, this failure is not fatal to the jury's finding that Plackis was Orozco's employer under the FLSA. As we stated in *Gray*, "each element need not be present in every case." *Gray*, 673 F.3d at 357. We therefore proceed to analyze the evidence in support of the remaining elements of the economic reality test.

No. 13-50632

To satisfy the first element of the economic reality test, Orozco had to present evidence that Plackis possessed the power to hire and fire him. There was testimony that some employees at the Southwest location also worked at the San Marcos location. Sandra explained that she hired employees from the Southwest location because they would not need training. Furthermore, Plackis testified that he met with Sandra to advise her on how to improve the profitability of the San Marcos location. After that meeting, Sandra removed her dishwashers from her weekday schedule. However, Plackis testified that he merely gave Sandra non-binding advice and Sandra testified that she made the decision to adjust the schedule.

The MJ erred when it held that the jury could reasonably conclude that Plackis had the authority to hire or fire Orozco. The testimony that some employees worked at the Southwest location and the San Marcos location does not show that Plackis possessed the power to hire or fire Orozco.[1] Contrary to the MJ's conclusion otherwise, the jury could not reasonably infer "that Plackis hired employees for one Craig O's location and directed them to work at another." There is no indication that Plackis ordered Sandra to hire those employees. Similarly, the mere fact that Sandra hired employees from the Southwest location does not prove that Plackis hired or fired employees. At most, this testimony merely explains why employees from other Craig O's locations were desirable candidates for the Southwest location. Indeed, this testimony supports Plackis's contention that this element is not met because it suggests that Sandra had an independent reason for hiring employees from the Southwest location. As for Plackis's meeting with Sandra, Plackis and Sandra testified that he merely provided her with advice on improving the profitability of the San Marcos location. This is conduct we would expect a

---

[1] In fact, Sandra testified that some of her employees also worked at McDonald's.

5

franchisor to engage in with a franchisee, especially a struggling franchisee. At best, Orozco can point to the sequence between the meeting and the personnel changes implemented by Sandra. Even accepting that inference, there is legally insufficient evidence to establish the first element of the economic reality test.[2] Notably, Orozco testified that Sandra hired him and had the authority to fire him.[3] As for Plackis, Orozco stated that he neither hired him nor possessed the power to fire him.

Moreover, during oral argument, Orozco's counsel admitted that there was no direct evidence supporting this prong. The jury was thus left to infer that Plackis had the authority to hire and fire employees. Such a conclusion was not warranted based on the testimony produced at trial. *See Gray*, 673 F.3d at 355–56 (holding that the first element was not established when the only evidence produced was that the defendant was a member of the board that ran the plaintiff's workplace and participated in a group decision to hire a general manager for the establishment).

Orozco also failed to present legally sufficient evidence in support of the second element of the economic reality test—that Plackis supervised and controlled employee work schedules or conditions of employment. Orozco

---

[2] Orozco further suggests that Plackis was involved in the FLSA violation at issue in this case; however, he fails to point to evidence that Plackis ordered Sandra to pay Orozco a particular amount or work a specific number of hours.

[3] The MJ properly held that Orozco's testimony was not dispositive of whether he presented legally sufficient evidence that Plackis was his employer, albeit for incorrect reasoning. The MJ concluded that "[g]iven [Orozco] was employed as a kitchen employee, his lack of awareness or understanding of the business relationship between Plackis and Plackis'[s] franchisor Sandra Entjer" did not pose "a legal bar" and was not dispositive of the legal question at issue. We do not view Orozco's testimony as dispositive; however, that is because Orozco's testimony is merely another fact to be considered in our analysis of whether Plackis qualified as his employer under the FLSA. *See Gray*, 673 F.3d at 356–57 (analyzing plaintiff's testimony that he thought another party, not the defendant, was his employer as just another fact to consider when determining whether the second element of the economic reality test was met).

testified that Sandra made changes to his hours and salary soon after meeting with Plackis. In addition, Plackis testified that he reviewed the employee work schedules at the San Marcos location and trained both Orozco and Sandra. Moreover, there was testimony suggesting that Plackis ordered Sandra to buy a radio for the restaurant. Orozco stated that he had to remain at work until an employee who worked at a restaurant owned by Plackis arrived. Orozco also testified that Plackis visited the San Marcos location frequently and met with Sandra or the shift managers. Orozco further testified that after these visits, the shift managers would relay messages to the employees from Plackis. Orozco also entered into evidence numerous e-mails from Plackis to his franchisees. In the e-mails, Plackis provided suggestions on how to improve the profitability of the restaurants, implemented changes to the menus, contracted with vendors for supplies for the franchise, and directed various advertising plans.

We are not persuaded that there is legally sufficient evidence in support of the second element. The MJ failed to fully consider the legal standard that must be satisfied in concert with the factual record. Orozco's best evidence is again the temporal proximity between Plackis's meeting with Sandra and the changes implemented in the San Marcos location; however, the temporal proximity between the meeting and the changes does not demonstrate that Plackis possessed the authority to supervise or control employee work schedules or conditions of employment. The MJ erred by concluding that the jury could infer Plackis's control over Orozco's working conditions because of "the effect of Plackis'[s] advice to Sandra." As we stated earlier, Plackis and Sandra testified that Plackis merely provided advice. Moreover, Plackis's other visits to the San Marcos location demonstrate, at most, that Plackis may have suggested improvements to Sandra and the employees. Nothing in the record indicated that Plackis supervised or controlled employee work schedules

or conditions of employment. Indeed, Orozco testified that Plackis did not set his work schedule and that the two never discussed Orozco's responsibility or position. Orozco further testified that Sandra controlled his work schedule.

The remaining evidence presented in support of the second element of the economic reality test is also inadequate. The mere fact that Plackis reviewed the schedules fails to demonstrate that he actually had control over Orozco's schedule or employment conditions. Similarly, training Sandra and Orozco does nothing to suggest that Plackis supervised or controlled the employees at the San Marcos location. This training occurred soon after the Entjers entered into the franchise agreement with Plackis. It is reasonable to assume that a franchisor would provide training to new franchisees and their employees. Likewise, Plackis's e-mails to his franchisees merely reveal a franchisor setting broad policies for the entire franchise and providing assistance to franchisees. Even if Plackis ordered Sandra to purchase a radio for the San Marcos location, we fail to see how that demonstrates that Plackis supervised or controlled Orozco's schedule or employment conditions. Moreover, the fact that Orozco could not leave work until an employee arrived from the Southwest location does not satisfy this element of the economic reality test.[4] To conclude, based on this evidence, that Plackis controlled or supervised Orozco's schedule or employment conditions is unreasonable. *See id.* at 356–57 (noting that the second element was not established when, during social visits to the workplace, the defendant merely complimented the

---

[4] The MJ reasoned that "[a]s the Southwest location was run by Plackis, a jury could reasonably infer Plackis'[s] control over [the employee] at the Southwest location affected [Orozco's] work schedule and effective rate of pay." We disagree. Such a conclusion would be unreasonable. Rather, the evidence merely showed that an employee at the San Marcos location arrived to work late sometimes because the employee did not leave his other job timely.

plaintiff's work and "twice asked [the plaintiff] to serve specific individuals" and the plaintiff stated that another party "defined his job duties").

Orozco also failed to adduce legally sufficient evidence in support of the third element—that Plackis determined Orozco's rate and method of payment. The MJ erroneously concluded that because Plackis was aware of Orozco's salary, "the jury could reasonably infer Plackis was in effect advising Sandra" regarding Orozco's salary, especially in light of the testimony regarding the meeting between Plackis and Sandra. As we previously noted, that meeting does not demonstrate that Plackis decided Orozco's rate or method of pay. In fact, Orozco testified that Plackis did not control his rate of pay. Sandra and Orozco testified that Sandra set his rate and method of payment. The MJ also reasoned that the jury could infer that this element was satisfied based on the testimony that Orozco had to remain at work until an employee from the Southwest location arrived. We fail to see how this evidence suggests that Plackis determined Orozco's rate and method of pay. Accordingly, we hold that Orozco did not produce legally sufficient evidence of the third element. *See Martin*, 688 F.3d at 252 (holding that the third element is not satisfied when the defendant merely stated that he would ensure employees were compensated and there was evidence that a third party handled the employees' payroll).

The Franchise Agreement also fails to support the jury's verdict. When interpreting a contract, we "must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless." *See Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) (per curiam) ("The terms . . . are given their plain, ordinary meaning unless the [contract] itself shows that the parties intended the terms to have a different, technical meaning." (alteration in original) (citation and internal quotation marks omitted)). Section 8a of the Franchise Agreement reads, in relevant part, as

follows: "Franchisee shall at all times comply with all lawful and reasonable policies, regulations, and procedures promulgated or prescribed from time to time by Franchisor in connection with Franchisee's shop or business." Indeed, section 8a also states, "Franchisee shall, irrespective of any delegation of responsibility, reserve and exercise ultimate authority and responsibility with respect to the management and operation of Franchisee's shop."

Section 8a demonstrates that Plackis had at least a certain degree of control over the San Marcos location; nonetheless, it fails to provide legally sufficient evidence in support of the jury verdict. Citing 29 C.F.R. § 791.2(b), the MJ reasoned that the jury could have concluded that Plackis controlled Sandra and Orozco. However, Orozco concedes that the Franchise Agreement is insufficient, by itself, to establish that Plackis qualifies as Orozco's employer under the FLSA. Moreover, the agreement does not indicate that Plackis had sufficient authority to satisfy the economic reality test, especially in light of the negligible evidence presented at trial in support of the test. *See Gray*, 673 F.3d at 355 (noting that defendants "held liable as FLSA employers . . . exerted actual operational control"). We find it notable that the MJ relied on the provision of the Franchise Agreement stating that Sandra had to follow "policies and procedures promulgated by the franchisor for 'selection, supervision, or training of personnel.'" We fail to see how this innocuous statement suggests that Plackis hired or fired employees, supervised or controlled employee work schedules or employment conditions, or determined Orozco's rate and method of payment.

We do not suggest that franchisors can never qualify as the FLSA employer for a franchisee's employees; rather, we hold that Orozco failed to produce legally sufficient evidence to satisfy the economic reality test and thus

failed to prove that Plackis was his employer under the FLSA.[5] *See Gray*, 673 F.3d at 357 ("While each element need not be present in every case, finding employer status when none of the factors is present would make the test meaningless."). Orozco's case is premised on a series of inferences that are not warranted on the record before us. The MJ therefore erred by failing to grant Plackis's motion for judgment as a matter of law. Because there was insufficient evidence to support the jury's verdict that Plackis was Orozco's employer, we need not address Plackis's remaining challenges to the jury verdict and the jury instructions.

## CONCLUSION

For the foregoing reasons, we REVERSE the MJ's denial of judgment as a matter of law and RENDER judgment in favor of Plackis.

---

[5] Orozco urges us to consider the economic reality of the situation and argues that "it matters little if one or more of the *Gray* factors is absent." Citing 29 C.F.R. § 791.2(b) and 29 C.F.R. § 779.224(b), Orozco argues that direct or primary control is not a prerequisite for employer status under the FLSA and that the FLSA does not require that Plackis exercise control frequently. We have considered the entirety of the circumstances and are persuaded that Plackis does not qualify as Orozco's employer under the FLSA.