# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 21, 2016

Lyle W. Cayce
Clerk

No. 15-60413
Summary Calendar

STEVEN EBERLINE, on behalf of himself and all other similarly situated employees,

Plaintiff - Appellant

v.

MEDIA NET, L.L.C.; JOHN ATEEQ; MYKHAYLO KALYN,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:13-CV-100

Before STEWART, Chief Judge, and DAVIS and GRAVES, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant Steven Eberline, on behalf of himself and all other similarly situated employees, appeals a jury verdict in favor of Defendants-Appellees Media Net, L.L.C., John Ateeq, and Mykhaylo Kalyn (collectively, "Defendants") on Eberline's claims under the Fair Labor Standards Act ("FLSA"). We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-60413

I.

In 2009, John Ateeq and Mykhaylo Kalyn started Media Net, L.L.C., a contracting company that performs installation services for DirecTV. Media Net hires satellite technicians and installers to install satellite television systems and to perform repairs for DirecTV customers. Media Net classified these technicians and installers as independent contractors. Eberline alleges that he was an installer that was improperly classified as an independent contractor and received no overtime payments even though he worked more than forty hours per week.

Eberline sued in federal district court, asserting that he was entitled to recover lost wages under the FLSA. Eberline moved for class certification under § 16 of the FLSA, and the district court conditionally certified a collective class for discovery purposes. Following discovery, both parties moved for summary judgment. The district court denied both motions, finding that genuine issues of material fact existed as to whether Eberline, and those similarly situated, were employees or independent contractors of the Defendants.

The case proceeded to a jury trial. At the close of Defendants' case, Eberline moved for judgment as a matter of law, arguing that no reasonable jury could conclude that he was not an employee. The district court denied the motion. The jury returned a verdict, finding that Eberline failed to prove that he was an employee of Defendants. Eberline renewed his motion for judgment as a matter of law, which the court also denied. Eberline then appealed.

II.

We review de novo the district court's denial of Eberline's motion for judgment as a matter of law. *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014). "A motion for judgment as a matter of law . . . in an action tried by a jury is a challenge to the legal sufficiency of the evidence supporting the jury's

2

No. 15-60413

verdict." *Id.* (quoting *SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008) (per curiam)). "A motion for judgment as a matter of law should be granted if there is no legally sufficient evidentiary basis for a reasonable jury to find for a party." *Id.* (internal quotation marks omitted); *see also Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004) ("A post-judgment motion for judgment as a matter of law should only be granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict." (internal quotation marks omitted)). We view the evidence, and reasonable inferences from the evidence, in the light most favorable to the verdict. *Orozco*, 757 F.3d at 448. Further, "we may not engage in credibility determinations or weigh evidence." *Id.* (internal quotation marks omitted). Though "[o]ur review of jury verdicts is especially deferential . . . we will not sustain a jury verdict based only on a mere scintilla of evidence."[1] *Id.* (internal quotation marks omitted).

## III.

A plaintiff seeking unpaid overtime compensation under the FLSA must first demonstrate, *inter alia*, an employer/employee relationship. *See Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). "The definition of employee under the FLSA is particularly broad." *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008). In determining whether a worker qualifies as an employee, "we focus on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is

---

[1] Eberline contends that we owe no deference to the jury's verdict because the question of employee status is to be determined by the court. We disagree. In *Orozco*, the defendant challenged the jury's verdict that he was the plaintiff's employer under the FLSA. 757 F.3d at 447–48. Though we concluded that the evidence was insufficient to support the verdict, we still applied an "especially deferential" standard of review. *Id.* at 448. Eberline's argument is particularly curious here where he did not object to the submission of the employee status question to the jury and argued in his original motion for judgment as a matter of law that no reasonable jury could find that he was not an employee.

3

instead in business for himself." *Id.* Five non-exhaustive factors guide this assessment: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *Id.* "[E]ach factor is a tool used to gauge the *economic dependence* of the alleged employee," and "no single factor is determinative." *Id.*

Eberline challenges the jury's determination that he was not Defendants' employee under the FLSA. Accordingly, we must decide whether the jury could properly determine, "as a matter of economic reality," that Eberline failed to establish that he was an employee. *Id.* We may reject the jury's verdict only if the facts and inferences weigh so heavily in Eberline's favor "that a rational jury could not reach a contrary verdict." *Pineda*, 360 F.3d at 486.

A.

"Under our economic-realities approach, '[c]ontrol is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity.'" *Hopkins*, 545 F.3d at 343 (quoting *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1049 (5th Cir. 1987)) (alteration in original). We consider whether the purported employee could exert independent control over meaningful aspects of his business life. *See Mr. W Fireworks, Inc.*, 814 F.2d at 1049–50.

A reasonable jury could conclude that the evidence on this element weighed in favor of independent contractor status. There was testimony that the installers were able to adjust their own work schedule based on the customers' needs. For example, Brian Hollingsworth, a Media Net installer, testified that he could perform personal tasks before going to a job, that there were no repercussions for late arrivals, that he was not required to check in

with the Defendants when he arrived, and that the actual job was handled "pretty much between" just the installer and the customer. Hollingsworth also testified that Defendants never called to check on his status when he was performing an installation. There was also testimony that Media Net did not supervise installations, inspect the installers' work, or even assign installation jobs to specific installers. Further, Hollingsworth testified that the installers could determine how many days they worked, which days they worked, and what time slots they were available to work. Mark Thoms, another Media Net installer, testified that he had previously refused assigned installation jobs with no penalty.

Further, there was evidence that installers could do custom work, i.e., anything outside the scope of a normal installation, at the request of a customer. There was testimony that installers could negotiate prices for custom work directly with the customer and keep that money without consequence. Hollingsworth testified that they were not required to inform Media Net of any money they received for performing custom work. Finally, there was testimony that the installers could hire other workers to assist them in completing installations. For example, Hollingsworth testified that he hired his sons to assist him and that his sons were not subject to any specific Media Net credentialing or hiring requirements.

Based on the record, the jury had sufficient evidence to conclude that Eberline exerted independent control over meaningful aspects of his business life. *See Mr. W Fireworks*, 814 F.2d at 1049.

## B.

Next, we consider the relative degree of investment. "In applying the relative-investment factor, we compare each worker's individual investment to that of the alleged employer." *Hopkins*, 545 F.3d at 344 (emphasis omitted). The jury could have reasonably concluded that this factor weighed in favor of

independent contractor status.   There was testimony that installers were required to provide their own vehicle and all of their installation tools and supplies.[2]   Kalyn testified that Media Net owned only a couple of computers related to the installation business, rented its office space, and routed calls through two persons in the Ukraine.   The actual equipment to be installed, e.g., the satellite boxes and dishes, was supplied by DirecTV.   A rational jury could have concluded that Eberline's individual investment outweighed that of the Defendants.  *Cf. Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1314 (5th Cir. 1976) (concluding that the investment element weighed in favor of employee status where "[b]ut for [defendant's] provision of all costly necessities, these [plaintiffs] could not operate").

C.

In determining a worker's opportunity for profit or loss, we "consider whether the worker or the alleged employer controlled the major determinants of the amount of profit which the [worker] could make."  *Hopkins*, 545 F.3d at 344 (alteration in original) (internal quotation marks omitted).   As discussed, there was testimony that the installers could determine the days and times that they were available to work.   There was also evidence that installation jobs were assigned based on an individual installer's efficiency rate on previous jobs.   That is, the installer's proficiency in performing installations increased the number of future assignments.   Further, and as noted, installers could also profit from performing custom work for customers.   Hollingsworth testified that the amount of custom work was controlled by the installer and the installer's ability to "market" himself.   Finally, there was testimony that an installer could leave individual business cards and perform other services for

---

[2] There was also testimony that the supplies used were required to be on a list of approved materials, but that an installer received no penalty unless the selected materials were "substandard."

customers at lower rates.  A reasonable jury could find that this factor weighed in favor of independent contractor status.  *See Hickey v. Arkla Indus., Inc.*, 699 F.2d 748, 752 (5th Cir. 1983) (concluding that a plaintiff's "opportunities for profit were significant" where the plaintiff "controlled the determinants of customer volume which played the most vital role in his opportunities for profit").

## D.

"We also consider whether the worker exhibits the type of skill and initiative typically indicative of independent-contractor status." *Hopkins*, 545 F.3d at 345.  We generally "look for some unique skill set or some ability to exercise significant initiative within the business."  *Id.* (internal citation omitted).  To meet this element, Eberline was required to produce evidence that he could not "exert initiative in the operation of [the] business." *Hickey*, 699 F.2d at 752.  As has been discussed, there was testimony that installers could receive more installation jobs, and thus more profits, based on their efficiency; that they could profit from performing custom work; that they could perform additional services for customers; and that they could control the days that they worked.  Accordingly, a reasonable jury could conclude that Eberline "exercise[d] significant initiative" as an installer, a finding weighing in favor of independent contractor status.  *Hopkins*, 545 F.3d at 345.

## E.

Finally, we consider the permanency of the working relationship.  As to this element, there was testimony that the length of the relationship between the Defendants and the installers was indefinite.  The Installment Agreement, which was admitted as a trial exhibit, provided that the Agreement would continue for one year, subject to automatic renewals.  Based on the evidence presented at trial, no reasonable jury could have concluded that this factor

favored independent contractor status.[3]  *See Cromwell v. Driftwood Elec. Contractors, Inc.*, 348 F. App'x 57, 61 (5th Cir. 2009) (per curiam) (finding the permanency factor satisfied where plaintiffs' employment was "steady and reliable . . . over a substantial period of time").

## IV.

In sum, the inquiry into employment status under the FLSA is one of economic reality.  *Hopkins*, 545 F.3d at 343–46.  Here, there was testimony that installers could (1) control the days and hours they worked; (2) perform custom work or additional services for customers to earn extra profits; and (3) hire assistants to help with their installation assignments.  Further, there was testimony that installers were required to provide their own supplies and tools to complete their work.  Based on the evidence presented at trial, the jury found that Eberline, and those similarly situated, had not proven that the installers were so economically dependent on Defendants as to be employees.  This conclusion was supported by legally sufficient evidence: Viewing the evidence in the light most favorable to the verdict, as we must, we are not convinced that the facts and inferences point so strongly in favor of Eberline that no rational jury could have concluded that he was not Defendants' employee.  *Pineda*, 360 F.3d at 486.

Accordingly, the judgment of the district court is AFFIRMED.

---

[3] Though this factor weighs in favor of finding employee status, the presence or absence of one single factor is not determinative.  *See Hopkins*, 545 F.3d at 343.