# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2020

Lyle W. Cayce
Clerk

No. 19-20567

Casey Nelson; Maylene Velasco,

*Plaintiffs—Appellants*,

*versus*

Texas Sugars, Incorporated, *doing business as* Moments,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-2171

Before Owen, *Chief Judge*, and King and Engelhardt, *Circuit Judges*.
Per Curiam:[*]

Exotic dancers sued the club where they perform, alleging violations of the Fair Labor Standards Act for failure to pay minimum and overtime wages. After trial, the jury returned a verdict in favor of the club, finding that the dancers were not employees within the meaning of the Fair Labor Standards Act. We AFFIRM.

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-20567

## I.

Defendant-appellee Texas Sugars, Inc. owns and operates Moments (the "Club"), an adult cabaret in Pasadena, Texas, which features exotic dancers. Plaintiffs-appellants Casey Nelson and Maylene Velasco were exotic dancers at the Club (the "dancers"). The dancers filed suit in federal court, alleging that Texas Sugars misclassified them as independent contractors and failed to pay them minimum and overtime wages in violation of the Fair Labor Standards Act (the "FLSA"). The dancers' suit proceeded to a jury trial, where the Club's general manager and multiple dancers[1] testified. Specifically, the jury heard competing testimony on a range of relevant topics such as how the dancers were paid, the various aspects of the work arrangement that the dancers and the Club each controlled, the relative investments of the dancers and the Club, the skill and initiative involved in being a dancer, and the dancers' typical tenure at the Club.

Plainly put, after several days of testimony, the jury heard various narratives about the dancers' work at the Club from which to determine whether the dancers were employees or independent contractors.

After Texas Sugars concluded its case-in-chief, the dancers moved pursuant to Federal Rule of Civil Procedure 50 for a directed verdict as to liability on the basis that, under our economic realities test, the dancers are employees and not independent contractors. The district court denied the motion. The dancers also objected to the jury instructions regarding employee status, arguing that the question of employee status was not appropriate to submit to the jury and that the instructions misstated the law. The district court overruled the objections, opting instead to follow our

---

[1] In addition to the two named dancers, six other dancers testified, three of whom were opt-in plaintiffs and another three of whom were not.

No. 19-20567

pattern instructions verbatim. Once the jury returned a verdict in favor of Texas Sugars, the dancers moved for a new trial and renewed their motion for a directed verdict. The district court denied the motion for a new trial.[2] The dancers timely filed a notice of appeal.

## II.

At bottom, this appeal is about whether the evidence adduced at trial supports the jury's finding that the dancers were not employees of the Club. We conclude that the evidence supports exactly that.

We review challenges to the denial of a Rule 50 motion de novo. *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014).[3] And to be clear, where there has been a jury trial, a Rule 50 motion "is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Id.* "A motion for judgment as a matter of law should be granted if there is no legally sufficient evidentiary basis for a reasonable jury to find for a party." *Id.* In other words, "[a] post-judgment motion for judgment as a matter of law should only be granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict." *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004). To that end, we view the

---

[2] The district court did not explicitly deny the renewed motion for a directed verdict. But, although "[t]here are circumstances where a district judge might rationally deny the motion[] for directed verdict . . . but grant the motion for a new trial," *Urti v. Transp. Com. Corp.*, 479 F.2d 766, 769 (5th Cir. 1973), the inverse is not necessarily so. In this case, the arguments on both the motion for a new trial and the renewed motion for a directed verdict were such that after ruling on the motion for a new trial, the district court was left with nothing else to resolve. *See* Fed. R. Civ. P. 50(b) (explaining that after the jury returns a verdict, "the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial").

[3] And though Texas Sugars posits that we should review this challenge for plain error, we disagree. The dancers preserved their challenge for appeal, and as discussed *supra*, their challenge nevertheless fails under our de novo review.

evidence in the light most favorable to the verdict. *Orozco*, 757 F.3d at 448; *Eberline v. Media Net, L.L.C.*, 636 F. App'x 225, 226 (5th Cir. 2016). Our review is especially deferential where there has been a jury verdict, and we do not engage in credibility determinations or reweigh the evidence. *Orozco*, 757 F.3d at 448; *Eberline*, 636 F. App'x at 226.

In FLSA cases for minimum wage and overtime compensation, a plaintiff must establish that she is an employee of the alleged employer. In determining whether a worker qualifies as an employee, we apply the economic realities test. Specifically, we "focus on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for [her]self." *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008). Five non-exhaustive factors guide our inquiry, and no one factor is determinative: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *Id.*; *see also Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 327 (5th Cir. 1993).

In this case, we consider whether the jury could properly determine, "as a matter of economic reality," that the dancers failed to establish that they were employees. *Reich*, 998 F.2d at 327. We will only reject the jury's verdict if the facts and inferences weigh so heavily in the dancers' favor "that a rational jury could not reach a contrary verdict." *Id.*; *see also Eberline*, 636 F. App'x at 226 (discussing that our review of jury verdicts is especially deferential). For the reasons that follow, we find that there was sufficient evidence for the jury to conclude that the dancers were not employees.

First, given the fact that the dancers set their own schedule, worked for other clubs, chose their costume and routine, decided where to perform (onstage or offstage), kept all the money that they earned, and even chose how much to charge customers for dances, a reasonable jury could conclude that the Club did not exercise significant control over them. Indeed, we have previously found that a worker's ability to adjust his or her own schedule, negotiate prices with customers, and keep whatever money was earned are all factors that a reasonable jury could conclude weigh against employee status and in favor of independent contractor status. *Eberline*, 636 F. App'x at 227–28.

Second, as to the "relative investments" factor, because the dancers provided their own costumes and makeup, the jury could conclude that this factor, too, weighed against employee status or was neutral. Specifically, although the Club made significant investments in, *inter alia*, advertising, décor, food, and alcohol, the jury could have concluded that those investments were not essential for the dancers to perform their work and thus the relative investments of the Club and the dancers were not necessarily comparable. In other words, the dancers' ability to perform and earn money did not depend on the Club's décor or food and alcohol offerings. And we have previously found that a reasonable jury could conclude that this factor weighs against employee status where a worker provides his or her own tools and supplies. *Eberline*, 636 F. App'x at 228.

Third, the jury could conclude that, although the Club determined certain aspects about the Club, the dancers assumed the risk of profit or loss by deciding how and when they chose to engage with customers, including when they worked, whether they performed onstage or offstage, and what choices they made regarding their costume and makeup. In other words, the dancers' risk of profit or loss was determined (at least in part) by when they worked and how they chose to interact with and market themselves to

customers. In fact, we have previously found that a reasonable jury could conclude that this factor weighs against employee status where the worker could set his or her own schedule and profit by how he or she chose to "market" himself or herself and which services he or she was willing to provide. *Eberline*, 636 F. App'x at 228.

Fourth, the jury could conclude that, although no specific dancing skill was required, the dancers had to take initiative in terms of when they worked as well as their customer interactions. Again, we have found that a jury could conclude that this factor weighs against employee status where the worker controls his or her schedule and can profit based on the services offered to customers. *Id.* at 228–29.

Fifth, even though some of the dancers worked at the Club for years, because the dancers had no set schedule and could pick their hours, the jury could have concluded that this arrangement was not a permanent one. We have previously found that arrangements that allow for movement from club to club and lack a set term weigh against employee status. *See Reich*, 998 F.2d at 328.

Finally, we note that we have also sometimes looked to whether the worker's services are integral to the business. *Hobbs v. Petroplex Pipe & Constr., Inc.*, 946 F.3d 824, 836 (5th Cir. 2020). And though the dancers argue that this consideration weighs in their favor because, without the dancers, the Club would just be a bar, this fact does not change our analysis. Nor would a determination that the relative investments factor is neutral. This is so because no one factor is determinative. *Hopkins*, 545 F.3d at 343; *Reich*, 998 F.2d at 327; *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043–44 (5th Cir. 1987); *see also Eberline*, 636 F. App'x at 229 (upholding jury verdict finding in favor of independent contractor status even where one of

the factors favored employee status). To that end, the jury could reasonably conclude that, on balance, the factors did not favor employee status.

### III.

The dancers also challenge the jury instructions. Specifically, on appeal, the dancers argue that the jury instructions misstated the law because they did not accurately capture the above-mentioned factors comprising our economic realities test. But the dancers are incorrect. Indeed, our pattern instructions, which the district court followed verbatim, undoubtedly capture these factors.

We review challenges to jury instructions that were properly objected to for abuse of discretion.[4] *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 240 (5th Cir. 2014).

Typically, we "afford the trial court great latitude in the framing and structure of jury instructions." *Eastman Chem. Co.*, 775 F.3d at 240. "In order to demonstrate reversible error, the party challenging the instruction must show that the charge creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Id.* In reviewing such challenges, we "consider whether the instruction, taken as a whole, 'is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them.'" *United States v. Freeman*, 434 F.3d 369, 377 (5th Cir. 2005). To object, a party "must do so on the record, stating distinctly the matter objected to and the grounds for the objection." FED. R. CIV. P. 51(c)(1).

---

[4] Here, again, Texas Sugars urges us to review this challenge for plain error. But because the dancers preserved this challenge for appeal, we decline to do so. Further, as discussed *supra*, this challenge nevertheless fails under abuse of discretion.

Further, we have previously held that a "district court [does] not abuse its discretion by using a pattern jury instruction that correctly state[s] the law." *United States v. Toure*, 965 F.3d 393, 403 (5th Cir. 2020); *United States v. Sheridan*, 838 F.3d 671, 673 (5th Cir. 2016) ("It is well-settled, however, that a district court does not err by giving a charge that tracks this Circuit's pattern jury instructions and that is a correct statement of the law.") (citations omitted); *see also United States v. Redd*, 355 F.3d 866, 874 (5th Cir. 2003) (discussing that "on a point such as instructions to juries there should be no difference in procedure between civil and criminal cases").

In this case, the district court simply used our pattern instructions without any deviation. And these pattern instructions specifically pertain to the question of employee status in the FLSA context. *See* Fifth Circuit Pattern Jury Instruction (Civil Case) 11.26.

To be sure, when read as a whole, the instructions are not misstatements of the law but accurately capture the employee-status inquiry. Specifically, the jury was directed to consider who controlled the dancers' work, how the dancers were paid, the risk or opportunity the dancers had for profit or loss, who supplied the necessary equipment, how the services were rendered, and how the parties understood their relationship.[5] All these considerations are relevant to the economic realities test that we apply to this

---

[5] To that end, the dancers' argument that the district court abused its discretion in failing to give an instruction on three economic realities factors—permanency of the relationship, skill and initiative, and whether the dancers are an integral part of the Club's business—is unavailing. First, we emphasize that no one factor is determinative. *Hopkins*, 545 F.3d at 343. Second, these factors are necessarily included in our pattern instructions. For example, even though the instructions do not use the words "relative investments" or "permanency," the jury was instructed to consider them because the jury was directed to consider how the services are rendered and the ability to transfer services.

question.[6] *Compare* Pattern Jury Instruction 11.26 *with Reich*, 998 F.2d at 327 (outlining our five, non-exhaustive factors that we use to guide the employee status inquiry). And, under the economic realities test, the considered factors are non-exhaustive. *Reich*, 998 F.2d at 327 (explaining that the "factors are merely aids in determining the underlying questions"); *Brock*, 814 F.2d at 1043–44 (discussing that "the factors are not exhaustive"); *see also Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019).

We note that, just because the dancers contend that a certain factor should have favored employee status, does not necessarily mean that the factor was framed incorrectly or even that the jury found to the contrary on a specific factor. Based on the jury's verdict, there is no way to know how the jury actually weighed any one factor, and we emphasize that no one factor is determinative. *Hopkins*, 545 F.3d at 343; *Reich*, 998 F.2d at 327; *Brock*, 814 F.2d at 1043–44.

Therefore, the district court did not abuse its discretion in adhering to our pattern instructions and overruling the dancers' objections to the jury instructions.

**IV.**

For the foregoing reasons, we AFFIRM.

---

[6] And though the dancers also argue that the specific pattern instruction, which directs the jury to consider the parties' intent, allows the jury to consider a factor outside of the five commonly considered factors, we emphasize that those factors are non-exhaustive, *Brock*, 814 F.2d at 1043–44, and our pattern instructions are careful to remind the jury that no one factor is determinative, *see* Fifth Circuit Pattern Jury Instruction (Civil Case) 11.26 (instructing the jury that "no single factor determines the outcome").