# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 3, 2021

Lyle W. Cayce
Clerk

No. 21-40268

JASPER LONG,

*Plaintiff—Appellee*,

*versus*

FAENAS TRANSPORT, L.L.C.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:19-CV-200

Before CLEMENT, SOUTHWICK, and WILLETT, *Circuit Judges*.
PER CURIAM:*

A jury returned a verdict in favor of Jasper Long in the amount of $500,000 for damage to his leased property caused by the negligence of an employee of Faenas Transport, L.L.C. ("Faenas"). Following the district court's entry of judgment on the verdict, Faenas moved for judgment as a matter of law and, in the alternative, for a new trial and/or remittitur. It

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

argued that Mr. Long failed to present sufficient evidence of the fair market value of the leasehold to support the jury's damages verdict. The district court denied Faenas' motion in all respects, and Faenas timely appealed. For the following reasons, we AFFIRM.

## I.

In 1999, Mr. Long paid approximately $60,000 for a 50-year lease of a warehouse in Jasper, Texas. Mr. Long opened and operated a welding business out of that warehouse until his retirement in June of 2014. During that time, Mr. Long made a variety of improvements to the warehouse, including installing three overhead cranes, interior office space, large bay doors, a new metal roof and walls, and commercial grade electrical wiring. Also during that time, at least three companies—Terra BioChem, Etex, and Traeger—maintained facilities on the same street as the warehouse.

Following his retirement in June of 2014, Mr. Long subleased the warehouse to an industrial welding company—STI Group—for two years at a rate of $4,600 per month. STI apparently vacated the property in April of 2014—about four months prior to the expiration of its lease—due to "lack of work." But it still paid rent to Mr. Long through the end of the lease term.

Mr. Long did not immediately place the warehouse back on the market for a subleasing tenant after STI vacated the premises because he "had to do some work on [the warehouse] before [he] put it back on lease." In particular, the warehouse needed, among other things, a new roof and new electrical wiring. Sometime between April 2016 and February 2017, Mr. Long made improvements to the electrical wiring in the warehouse. Moreover, in late February or early March of 2017, Mr. Long hired a construction company to install a new roof on the warehouse.

Then in June of 2018, a fire occurred at the warehouse after one of Faenas' employees hit a nearby electrical power pole with his truck. The fire

No. 21-40268

completely destroyed the warehouse and its contents.  Subsequently, Mr. Long sued Faenas, alleging that the negligence of Faenas' employee caused the fire.  At the close of Mr. Long's case in chief, Faenas orally moved for judgment as a matter of law on the ground that the evidence presented was insufficient to prove liability or damages.  The district court orally denied Faenas' motion.

The jury returned a verdict for Mr. Long, finding Faenas liable for negligently causing the fire and awarding Mr. Long $500,000 in damages.  The district court entered judgment on the verdict.  Following the district court's entry of judgment, Faenas moved for judgment as a matter of law and, in the alternative, for a new trial and/or remittitur.  Faenas argued that Mr. Long failed to present legally competent evidence as to the fair market value of his leasehold prior to the fire.

The district court disagreed and upheld the verdict.  First, it denied Faenas' motion for judgment as a matter of law, holding that sufficient evidence existed to support the jury's verdict.  Second, it denied Faenas' motion for a new trial, holding that the verdict was not against the great weight of the evidence, the damage award was not excessive, the trial was not unfair, and that prejudicial error was not committed.  Third, it denied Faenas' motion for remittitur, holding that the jury's damage award was appropriate because it was not so large as to appear contrary to right reason, nor was it excessive or disproportionate to the loss sustained.  Faenas timely appealed.

## II.

### A.

"This court reviews de novo a district court's denial of a motion for judgment as a matter of law, applying the same standard as the district court." *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1039 (5th Cir. 2011).

3

No. 21-40268

"[W]hen a case is tried by a jury, a Rule 50[] motion is a challenge to the legal sufficiency of the evidence." *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008) (citing *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 296 (5th Cir. 2005)).[1] "In resolving such challenges, we draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving party." *Id.*

"Our review of jury verdicts 'is especially deferential.'" *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014) (quoting *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 498–99 (5th Cir. 2012)). "[J]udgment as a matter of law should not be granted unless the facts and inferences point 'so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'" *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001) (quoting *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1322 (5th Cir. 1994)). "[T]he court may not make credibility determinations or weigh evidence, as those are jury functions." *Brennan's Inc. v. Dickie Brennan & Co. Inc.*, 376 F.3d 356, 362 (5th Cir. 2004).

## B.

"A new trial may be granted if the trial court finds that 'the verdict is against the weight of evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed.'" *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991) (quoting *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985)). The court should not grant a motion

---

[1] We apply the same standard of review to both motions for judgment as a matter of law brought under Rule 50(a) and *renewed* motions for judgment as a matter of law brought under Rule 50(b). *See Foradori*, 523 F.3d at 485 n.8; *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 269 n.22 (5th Cir. 1980).

No. 21-40268

for a new trial "unless the verdict is against the *great* weight, not merely the *preponderance*, of the evidence." *Id.* (emphasis added).

We review the denial of a motion for a new trial for abuse of discretion. *Lincoln v. Case*, 340 F.3d 283, 290 (5th Cir. 2003). "Where a jury verdict is at issue, 'there is no . . . abuse of discretion unless there is a complete absence of evidence to support the verdict.'" *Benson v. Tyson Foods, Inc.*, 889 F.3d 233, 234 (5th Cir. 2018) (per curiam) (quoting *Sam's Style Shop v. Cosmos Broad. Corp.*, 694 F.2d 998, 1006 (5th Cir. 1982)).

## C.

Similarly, we review a district court's order denying a motion for remittitur for abuse of discretion. *Lincoln*, 340 F.3d at 290. "We set aside a decision to deny remittitur only when 'left with the perception that the verdict is clearly excessive.'" *Salinas v. O'Neill*, 286 F.3d 827, 830 (5th Cir. 2002) (quoting *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995)). "A verdict is excessive if it is 'contrary to right reason' or 'entirely disproportionate to the injury sustained.'" *Eiland*, 58 F.3d at 183 (quoting *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983)).

## III.

The parties do not dispute that the warehouse had no value after the fire. Nor do they dispute that the proper measure of damages is the fair market value of the leasehold immediately prior to the fire, as measured by the "income approach." They dispute only whether Mr. Long presented sufficient evidence of the fair market value of his leasehold prior to the fire to

support the jury's verdict of $500,000.  The district court concluded that he did, and we agree.

## A.

Under Texas law, "fair market value" is "the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying." *Singleton v. Elephant Ins. Co.*, 953 F.3d 334, 338 (5th Cir. 2020) (per curiam) (quoting *Balderas-Ramirez v. Felder,* 537 S.W.3d 625, 628 (Tex. App.—Austin 2017, pet. denied)).  And there are three traditional methods used to calculate a property's fair market value: the comparable sales approach, the replacement cost approach, and the income approach.  *See, e.g.*, *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 871 (Tex. 2009).

The "income approach" is considered a reliable method when, as here, the property in question is priced on the open market based on the income it generates.  *See, e.g.*, *City of Harlingen v. Est. of Sharboneau*, 48 S.W.3d 177, 183 (Tex. 2001).  Generally, fair market value based on the "income approach" is calculated by estimating the amount of future income the property will generate and then applying a capitalization rate to arrive at its present value.  *Id.*  Neither party disputes the propriety of the income approach as the method of calculating damages in this case.

Under the "property owner rule" in Texas, property owners are qualified to testify as to the value of their property.  *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 155 (Tex. 2012).  However, that testimony must be based on *market* value, not merely speculative or intrinsic value.  *Id.*  A property owner's mere *ipse dixit* is not enough; his testimony must be accompanied by objective evidence supporting his estimation of the property's value.  *Id.* at 156 (discussing *Porras v. Craig*, 675 S.W.2d 503, 505 (Tex. 1984)).

1.

The evidence that Mr. Long presented at trial relevant to the fair market value of his leasehold consisted primarily of: (1) his wife's testimony, (2) the testimony of Raymond Horn, (3) the testimonies of Derrick Boykin and Eddie Marshall, and (4) his own testimony.

Mrs. Long's testimony was the most substantial. She testified, *inter alia*, that: (i) there remained just over thirty-one years (373 months) on Mr. Long's lease at the time of the fire; (ii) following his retirement, Mr. Long initially marketed the warehouse by "word of mouth" and by "putting contacts out"; (iii) Mr. Long subleased the warehouse to STI in 2014 for a total of twenty-four months and for a rate of $4,600 per month; (iv) after STI vacated the premises, Mr. Long advertised the warehouse in a local flier, used a sign designating it as "for lease," and consulted Jasper Economic Development Corporation ("JEDCO") to help with marketing; (v) at the time of the fire, other businesses were operating on the street that the warehouse was located on, and the number of commercial businesses operating there was "[d]efinitely increasing"; (vi) there was a repair shop on the leasehold property that was rented out at a rate of $1,000 per month at the time of the  fire; (vii) the Jasper County Appraisal District assigned the warehouse a value of $64,680; and (viii) JEDCO had informed her and Mr. Long that it knew of a party potentially interested in subleasing the warehouse.

Mr. Horn, whose construction company installed a new roof on the warehouse, testified, *inter alia*, that: (i) he installed the roof around February or March of 2017, at which time the warehouse was vacant; (ii) he charged Mr. Long $11,300 to install the new roof; and (iii) the warehouse was "basically set up and ready for a big organization to come in and do manufacturing or prefab work or whatever."

Mr. Boykin and Mr. Marshall both testified, *inter alia*, as to the area in which the warehouse was located.  Their testimonies confirmed that the warehouse was located in the same area—indeed, on the same street—as facilities maintained by Traeger, Terra BioChem, and Etex.

Mr. Long testified about the fair market value of his leasehold immediately prior to the fire.  Based on the improvements that he made to the warehouse, as well as the amounts he received per month in lease payments from STI during its tenancy, Mr. Long testified that the fair market value of his leasehold just before the fire was between $600,000 and $650,000.  When asked on direct examination to explain this estimate, Mr. Long stated that he based his valuation on "what [the warehouse] could do" and "the shape the inside was in."

2.

Faenas argues that Mr. Long's evidence is legally insufficient to establish the fair market value of his leasehold immediately prior to the fire to support the jury's verdict.  The thrust of its argument is twofold.  First, it argues that Mr. Long's opinion testimony valuing his property between $600,000 and $650,000 is incompetent evidence because it was not supported by objective market data.  Second, Faenas argues that there was no evidence of demand for a sublease on the warehouse at the time, even quipping that Mr. Long "failed to put the 'market' in 'fair market value.'"

Mr. Long rejoins that his testimony *was* competent evidence, given that it was based on objective facts and data regarding the warehouse's attributes and proven ability to generate income.  Specifically, he points to the rental income he received from STI from 2014 to 2016, the amount of time remaining on the lease, the improvements he made to the warehouse, its suitability and readiness for lease, and its desirable location in an already growing area.

We agree with Mr. Long.  To be sure, Faenas elicited testimony from both Mr. and Mrs. Long that strongly cut against Mr. Long's opinion on the fair market value of his leasehold.  Specifically, when counsel for Faenas pressed Mr. Long on cross examination, Mr. Long conceded that he did not have any evidence supporting his estimate of the fair market value of the leasehold beyond its value to him.  Similarly, Mrs. Long testified on cross examination that she had no evidence of market demand for a sublease of the warehouse at the time of the fire.

But the balance of the evidence is sufficient such that a reasonable jury could have reached the same verdict.  First, both Mr. and Mrs. Long testified that following Mr. Long's retirement, STI subleased the warehouse for two years at a rate of $4,600 per month.  The value of that two-year sublease alone exceeds $110,000.  From this evidence, combined with the fact that there were thirty-one years remaining on the lease, a reasonable jury could infer that the warehouse had significant income-generating potential.

Second, Mr. Long presented evidence that the warehouse was in *better* condition immediately prior to the fire than it was during STI's sublease.  Namely, it had an expensive new roof and new electrical wiring.  And, as Mr. Horn testified, it was in ready condition to be subleased.  A reasonable jury could infer from this evidence that the warehouse could command at least a similar monthly rate on future subleases.

Third, testimony from multiple witnesses suggested that the warehouse was located in a commercially active area that was experiencing at least some level of growth.  At least three companies with industrial operations—and from three separate industries—maintained facilities on the same street that the warehouse was on.  In addition, Mrs. Long's testimony suggested that JEDCO had identified a party potentially interested in

No. 21-40268

subleasing the warehouse.  A reasonable jury could infer from this evidence that the warehouse had sufficient potential to attract future tenants.[2]

While it may be true that reasonable juries could draw other, and perhaps even more plausible, inferences from the evidence presented, that is not the question before us.  The question is whether *any* reasonable jury could reach the same verdict.  And in answering that question, we must view all the evidence and draw all reasonable inferences in favor of Mr. Long.  In so doing, we cannot say that *no* reasonable jury could have concluded that the fair market value of Mr. Long's leasehold was $500,000.

Accordingly, the district court did not err in denying Faenas' motion for judgment as a matter of law.

## B.

For substantially the same reasons, the district court did not abuse its discretion in denying Faenas' motion for a new trial.  As previously discussed, there was not a complete absence of evidence to support the jury's damages verdict awarding Mr. Long $500,000 for the fair market value of his leasehold.

## C.

Neither did the district court abuse its discretion in denying Faenas' motion for remittitur.  Faenas does not argue—nor did it argue before the district court—that similar jury awards in cases within Texas were smaller

---

[2] To the extent that Faenas argues that STI's early termination of its sublease is evidence of lack of demand for a sublease of the warehouse, we find this argument unpersuasive.  That STI ended its tenancy because of "lack of work" very likely could mean that there was just no demand for *STI's services*.  It is not necessarily evidence that, at the time, there was insufficient demand for a sublease of *the warehouse*—at least not strong enough to warrant overturning the jury's verdict.  In any event, the jury was free to weigh this fact and draw whatever reasonable inferences it saw fit.

than the jury award here.  Rather, it argues only that the district court should have reduced the jury's damages award to $64,680—the value assigned to the warehouse by the Jasper County Appraisal District when it appraised Mr. Long's property—which Faenas claims is the one and only amount supported by the evidence.

We disagree.  Faenas is incorrect that $64,680 is the *only* amount supported by legally competent evidence.  As already explained, the district court properly allowed the jury to consider Mr. Long's opinion *in conjunction with* the rest of the evidence submitted—including without limitation the $110,000 in rental income received from 2014 to 2016 alone; the time remaining on the lease; the lead on a potential tenant; and the improvements made to the warehouse, its desirable location, and its suitability and readiness for lease.  From this evidence, the jury was permitted to make reasonable inferences about the income-generating potential of Mr. Long's leasehold, and its verdict was not clearly excessive or contrary to all reason in light of the evidence.

Notably, Faenas even acknowledges this, conceding that "the jury's award is within the range of what the district court erroneously allowed the jury to consider as evidence."  But contrary to Faenas' suggestion, the district court did *not* err in what it allowed the jury to consider.  In the end, Faenas ventures fairly close to asking us to substitute our judgment for that of the jury.  We will not.

Accordingly, the district court did not abuse its discretion by denying Faenas' motion for remittitur.

## IV.

Based on the totality of the evidence presented, and affording the jury's verdict the high level of deference it is due, we simply cannot say that

No. 21-40268

*no* reasonable jury would have reached the same verdict, that there was a complete absence of evidence supporting it, or that it was clearly excessive.

The judgment is AFFIRMED.